JOHN E. BRIANO, aka RAUL E. GOMEZ, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 9952

July 12, 1978                                    581 P.2d 5

*Thomas L. Pursel,* Las Vegas, for Appellant.

*Robert List,* Attorney General, Carson City; *George E. Holt,* District Attorney, and *H. Leon Simon,* Chief Appellate Deputy, Clark County, for Respondent.

## OPINION

*Per Curiam:*

A jury found appellant John E. Briano guilty of murder in the first degree. Judgment of conviction was entered, and he was sentenced to life imprisonment without possibility of parole. The sole issue presented on this appeal is whether there was substantial evidence in the record to support the jury's finding that the murder was "willful, deliberate and premeditated". NRS 200.030, subsection 1(a).

1. Russell Bridges, the victim, was the middle-aged manager of the Gold Key Motel in Las Vegas. Bridges and Briano, a twenty-three year old ex-marine, met through mutual acquaintances and became roommates at Bridges's apartment, sharing the rent. Briano had lived there for approximately three weeks before the murder occurred. On the night of the murder, Briano borrowed Bridges's car to go downtown to look for a friend. He was unsuccessful, but did run into Dennis Webb, with whom he returned to the apartment at approximately 2 a.m.

Briano related this account, received in evidence at trial, of the events which resulted in Bridges's death:

> "Then I entered the door of the apartment and I told my friend to go ahead and sit down on the couch. So I

went to Bridges and Bridges says how come you were out so late? And he sat up on the couch or bed and I said I don't know. He just took a swing at me and he hit the lamp stand and knocked down the lamp. And I hit him on the throat with my hands apart. And he hit the wall. And he hollered help. I took another swing with my hands in a fist, hit him on the throat again and he just got—I felt he was gagging already. He hit my chest with his head and then I saw Dennis coming over. He kicked him on the side. We threw Russ back on the bed and I hit him twice over the neck. And all of a sudden he started gagging and bleeding a lot. I grabbed for his neck to turn him over to see what I could do. And I couldn't see anything that I could do. I went to sit down and I went to the bathroom to wash my hands because they were with blood. I came back and sat down. I didn't know what to do. So then a couple of minutes later the door knocked. It was a police officer and I acted like nothing happened. I didn't know anything about it.''

Briano admitted striking Bridges ''a good ten times'' on the throat, neck, and sides, and holding Bridges by the throat to prevent him from getting up.

The police officer to whom Briano referred testified that when he arrived at the scene, Briano stated that the noise in the apartment was the result of his stumbling into a lamp in the darkened apartment and his call for assistance. Briano explained the bloodstains on his shirt were the result of a nosebleed. When the officer observed the covered body of Bridges lying on a couch, Briano claimed that it was the person who rented the apartment, who was sleeping.

The pathologist called by the state testified that death resulted from hemorrhaging into the trachea and larynx, which had been fractured by heavy blows to the neck. He further testified that there was some evidence of an attempt at manual strangulation.

Briano, testifiying in his own behalf, stated that he and Bridges had previously quarreled over his use of Bridges's car. He further admitted saying to Bridges ''one of these days I will kill him [Bridges]''.

The jury, having been instructed on the crimes of first and second degree murder, voluntary and involuntary manslaughter, returned a verdict of first degree murder.

2.    ''The question of premeditation is always one of fact for the jury, and each case is governed by its own circumstances.''

State v. Loveless, 62 Nev. 312, 326, 150 P.2d 1015, 1021 (1944). Appellant's argument that the direct evidence is also consistent with a verdict of second degree murder ignores the proper function of this court on appellate review. *See* Wheeler v. State, 91 Nev. 119, 531 P.2d 1358 (1975). It is settled law in this state that a jury verdict of first degree murder will not be disturbed so long as there is substantial evidence in the record upon which the verdict could legally be based. State v. Boudreau, 67 Nev. 36, 214 P.2d 135 (1950).

In order to make a case of murder in the first degree, the state must prove that a design to kill was distinctly and rationally formed in the mind of the perpetrator, at or before the time the fatal blows were struck. State v. Boudreau, *supra;* State v. Ah Mook, 12 Nev. 369 (1877). The state need not prove motive. State v. Plunkett, 62 Nev. 265, 149 P.2d 101 (1944). Nor does it matter how short a time existed between the formation of the design to kill and the killing itself. State v. Loveless, *supra;* State v. Acosta, 49 Nev. 184, 242 P. 316 (1926); State v. Millain, 3 Nev. 409 (1867).

Evidence of premeditation and deliberation is seldom direct. Circumstantial evidence which may be taken into account, and provide the substantial evidence required, includes evidence of prior threats against decedent by the defendant, State v. Gambetta, 66 Nev. 317, 208 P.2d 1059 (1949), Peoples v. State, 83 Nev. 115, 423 P.2d 883 (1967); the sequence of events which leads to the death of the victim, including the probable manner in which injuries were inflicted, State v. Sala, 63 Nev. 270, 169 P.2d 524 (1946), State v. Plunkett, *supra;* and the conduct of the defendant after the incident, State v. Hall, 54 Nev. 213, 13 P.2d 624 (1932), State v. Sala, *supra,* State v. Gambetta, *supra.*

In this case there was ample evidence in all three categories upon which the jury could reasonably have based an inference that Briano's murder of Bridges was deliberate and premeditated. Briano admitted threatening to kill Bridges on a previous occasion. The jury was not required to believe his explanation that the threat was idle. Briano's own account of the murder indicates that he inflicted a brutal beating upon the decedent, and that it continued after Bridges was gagging and asking for help. Resumption of the beating of the helpless victim constitutes, in itself, substantial evidence in support or the jury's verdict. *See* State v. Sala, *supra;* State v. Faust, 118 S.E.2d 769 (N.C. 1961); State v. Wilson, 142 P.2d 680 (Or. 1943). Finally,

426

there was the attempt by Briano to conceal the entire incident, and the death of the victim, from the police.

In light of all these circumstances, we conclude that the evidence was legally sufficient to warrant the jury's determination that Briano's murder of Bridges was deliberate and premeditated.

The judgment of conviction is affirmed.