**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee**

**v.**

**JUAN ASCENCIO ROLDAN, Appellant**

No. 79-1443

United States Court of Appeals

Third Circuit

Argued December 7, 1979

Filed December 28, 1979

DOUGLAS A. BRADY, ESQ., Christiansted, St. Croix, V.I., *for appellant*

DOUGLAS R. SCHWARTZ, ESQ., Assistant U.S. Attorney, Christiansted, St. Croix, V.I., *for appellee*

Before GIBBONS, WEIS and GARTH, *Circuit Judges*

OPINION OF THE COURT

GARTH, *Circuit Judge*

This is an appeal from a conviction for murder in the first degree under V.I. Code tit. 14, § 922(a)(1). Juan A. Roldan, the convicted defendant, challenges first, the admission into evidence of his prior conviction and second, the sufficiency of the evidence of premeditation and de-

liberation. Because we are satisfied that the district court did not err in its evidentiary ruling or in submitting the case to the jury, we affirm.

## I.

On the morning of March 23, 1978, Enrique Garcia was found dead in a yard close to Roldan's property. His body, which was covered with blood, revealed multiple stab wounds. An autopsy disclosed that the stab wounds were the cause of death.

Roldan, who was a neighbor of the owners of the yard where the body was found, was arrested and charged with first degree murder. Blood was found in and around Roldan's house, on some articles of clothing, and on Roldan's person. A blood-stained machete, which fit the autopsy description of the murder weapon, was found atop an outhouse in Roldan's yard.

Roldan was found guilty by a jury after a two-day trial. Testimony included that of Luz Maria Cruz, the wife of Roldan's nephew. Cruz was called by the Government. Defense counsel's cross-examination began as follows:

Q Mrs. Cruz, I am a lawyer for Mr. Roldan, I am going to ask you a few questions.

Now, have you known Mr. Roldan for two or three years?

A Yes. I am married to my husband since 1961, ever since I know him.

Q Do you ever see people other than Mr. Roldan going to his house?

A No.

Q Would you say that he is a lonely unsociable fellow?

A *He is a man that never bother anybody.*

Trial Transcript at 38–39 (emphasis supplied). This line of questioning was not continued.

The Government, at a sidebar conference, and in chambers during a recess, contended that Roldan's counsel, by

these inquiries, had introduced evidence of Roldan's good character, thereby allowing the Government to impeach Cruz' testimony on redirect examination. The Government offered defense counsel a choice—either retract the third question ("Would you say that he is a lonely unsociable fellow?"), and strike the answer given, or the Government would question Cruz about Roldan's prior murder conviction. Roldan's attorney refused to retract the question or to move to strike the answer. At the same time he also objected to the Government's proposed impeachment. The district court then made clear to defense counsel that the Government would be allowed to question Cruz about the prior conviction.

On redirect examination, Cruz was asked the following questions by the Government:

> Q Mrs. Cruz, you are aware, are you not, that the Defendant was convicted previously of murder in the 1st degree?
>
> Mr. JOHNSON: [defense counsel] I object to the question and ask that it be stricken and the jury instructed to disregard.
>
> THE COURT: I will overrule the objection on the grounds I previously stated.
>
> A (By the witness) Yes, I knew about that.
>
> Q (By Mr. Schwartz [Assistant U.S. Attorney]) You knew he was convicted of murder in the 1st degree?
>
> A Yes, sir, I have known of that.
>
> Q And you would still say he is a man who never bothers anyone?
>
> A Now, yes, I have to say that.

Id. at 51.

Before instructing the jury, the district court denied Roldan's motions for a mistrial based on admission of the prior conviction, and for acquittal for insufficiency of evidence of premeditation and deliberation required for first degree murder. The jury was instructed as to the elements of first and second degree murder and returned a

verdict of guilty of first degree murder. Roldan was sentenced to life imprisonment.[1]

## II.

Roldan argues that it was error for the district court to have allowed the Government to inquire whether Cruz knew that Roldan had been convicted previously of first degree murder, since evidence of prior bad acts is generally inadmissible.

## A.

Rule 404 of the Federal Rules of Evidence provides in relevant part:

(a) *Character evidence generally.*—Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

(1) *Character of accused.*—Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;

\*　　\*　　\*

(b) *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Thus, if Roldan "opened the door" by putting his character in issue, it was permissible for the Government to put in evidence of Roldan's bad character through impeachment of Cruz' good character assessment, by asking her

---

[1] Sentence was pronounced on February 28, 1979. The judgment was not signed, however, until March 16, 1979, nunc pro tunc to February 28, 1979. Roldan's notice of appeal, filed on March 16, 1979, was nevertheless timely because the ten-day appeal period of Fed. R. App. P. 4(6) commences when the judgment of sentence is actually entered on the criminal docket. See In re D'Arcy, 142 F.2d 313, 315 (3d Cir. 1944); 6A J. Moore, Federal Practice ¶ 58.08, at 58-307 (2d ed., 1979 rev.).

about her familiarity with Roldan's prior conviction.[2] The permissible methods of doing so are specified in Fed. R. Evid. 405 (emphasis supplied):

(a) *Reputation or opinion.*—In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. *On cross examination, inquiry is allowable into relevant specific instances of conduct.*

(b) *Specific instances of conduct.*—In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.

██ Cruz was closely related to Roldan and could have been expected to render a positive character evaluation. The district court determined that by asking the questions about Roldan's social habits, Roldan's counsel had put Roldan's character in issue. We agree. The last two questions which Roldan's counsel asked Cruz, are apparently directed toward establishing that Roldan had little contact with anyone and would therefore be unlikely to have reason to murder anyone. We do not think that Cruz' answer, "He is a man that never bother anybody," was a gratuitous, unsolicited remark; on the contrary, it was precisely the type of answer called for by defense counsel. The court's admission of the Government's impeachment testimony was thus proper.[3]

---

[2] Under the Federal Rules of Evidence, either party may attack the credibility of any witness. Fed. R. Evid. 607. Thus, it is irrelevant that Cruz was initially called by the Government. Character evidence was introduced for the first time on cross-examination. For the purpose of rebuttal of this evidence, therefore, the Government's redirect examination was the functional equivalent of the "cross-examination" referred to in rule 405(a).

[3] A prior witness, Andrea Camacho, also a neighbor of Roldan's had testified in response to Roldan's counsel's questions that she didn't know if he ever had visitors and hadn't seen any. Trial Transcript at 33. This reinforces our conclusion that Roldan's counsel was trying to paint Roldan as a benign recluse.

In addition, Roldan argues that the evidence of his prior first degree murder conviction should have been excluded under Fed. R. Evid. 403 because its probative value was outweighed by potential prejudice. Although Roldan would have been entitled to a limiting instruction had he

## B.

Any doubts we might have had concerning the question whether Roldan had intentionally put his character in issue, or was rather the unfortunate victim of an unexpected and unresponsive answer, are resolved by the Government's willingness to forgo inquiry into Roldan's bad character provided Roldan's counsel agreed to retract the third question and move to strike Cruz' answer. The record reveals the colloquy that transpired in chambers:

THE COURT: . . .

Now, perhaps you can state specifically why you think you would be entitled to ask her about his previous conviction for murder?

MR. SCHWARTZ [Assistant U.S. Attorney]: Yes. I think the witness is related to the Defendant; I am reasonably if not positively sure she is aware that the Defendant was convicted of Murder in the 1st degree before, and I think her statement to the jury that he is a man who never bothers anybody, couldn't be any more misleading than it was.

I told Mr. Johnson if he wanted to retract the question and the answer, that could be a possible remedy, but I think not only did Mr. Johnson put the Defendant's character in issue, but the witness then made the statement that was false and totally misleading.

THE COURT: And you want to impeach her?

MR. SCHWARTZ: If that is the only alternative, Your Honor.

THE COURT: As well as bring that trait of his character into issue?

MR. SCHWARTZ: Yes, sir. My main concern at this point is that she gave a statement that was misleading and untrue to the jury.

THE COURT: Mr. Johnson, have you checked Rules 404 and 405?

What do you say?

---

asked for one, see Part II-D infra, he never requested such an instruction. Needless to say, knowledge of a prior first degree murder conviction is highly probative of the credibility of a witness who claims a defendant never bothers anyone. Admission of the evidence was not an abuse of discretion.

MR. JOHNSON: The way I read Rule 404 and 405 is that the specific act of misconduct resulting in a conviction may not be gone into under these circumstances.

THE COURT: What about impeachment?

MR. JOHNSON: I don't think the Government is entitled to impeach its own witness. The Government did not have to call her, she was there and the questions I asked were perfectly proper cross examination.

THE COURT: The Rules now allow a party to impeach his own witness especially when it is to impeach them for an answer given on cross examination.

MR. JOHNSON: We are treading on very thin ice, Judge.

MR. SCHWARTZ: Mr. Johnson, that was your mistake.

MR. JOHNSON: Don't compound it by making this mistake.

MR. SCHWARTZ: I told Mr. Johnson if he wants the Judge to strike the question and answer from the jury to keep the record free from any doubt, I would agree, but I think I am losing a very good opportunity.

THE COURT: Are you giving the defense the opportunity to ask the Court to strike?

MR. SCHWARTZ: Yes, sir, just to keep the record free from this issue. I don't think it is that material except that she gave a misleading answer.

I won't have any objection if that is done.

MR. JOHNSON: The defense will not make that request.

MR. SCHWARTZ: Then I make my motion.

THE COURT: I think under the circumstances I would say that on two grounds, one is that the character traits of the accused was put in issue, the previous questions and answers brought out the fact that he doesn't have very many visitors and you could have stopped there but then to ask the question in issue, definitely put into issue his character and her answer definitely said he was a peaceable man, doesn't bother anybody, I think on the grounds that she should know, she should have known of his conviction of murder, that it also may be grounds for impeachment, so on those two bases putting his peaceable character into evidence or unpeaceable character into evidence and the impeachment purposes, I would have to allow you to ask that question and go into that matter.

691

MR. SCHWARTZ: Your Honor, I am sure the record states the prosecution gave the defense the opportunity to retract the question and answer and they decided they did not want to retract the question and answer.

THE COURT: Yes.

Trial Transcript at 46–49.

■ There can be little question that Cruz' answer went to Roldan's character. Counsel's refusal to retract the question and to move to strike the answer—based on his persistence in an erroneous belief that the Government could not impeach its own witness—negates any possible claim that Roldan should not be held responsible for soliciting Cruz' character testimony. Since Roldan thereby invited the Government's damaging cross-examination, he "will not be heard to complain of matters which result from his own conduct," United States v. Greenberg, 419 F.2d 808, 809 (3d Cir. 1969) (per curiam.)[4]

## C.

Roldan objects further to the form of the impeachment questions, arguing that it was improper to use the phrases, "you are aware, are you not," and "[y]ou knew," rather than the form, "have you heard." Roldan objected only to the first of the two questions, and did not specify that his objection went to the form rather than the content of the question. The court certainly did not understand the objection as going to the form, since the court overruled it "on the grounds I previously stated," id. at 51, i.e., because Roldan had put his character in issue.

---

[4] While it is by no means crucial to our disposition of this appeal, we note that the Government went out of its way to assist Roldan tactically. Nothing in the Federal Rules of Evidence requires the Government to reveal the nature of its bad character evidence and then afford defense counsel the opportunity to "withdraw" good character evidence the jury has already heard so as to preclude introduction of bad character evidence. Yet, this is exactly what the Government did in this case. In fact, the Government could have done no more, since only Roldan's counsel, who asked the relevant question, could have moved to strike the answer as not responsive, Ridenour v. United States, 14 F.2d 888, 891 (3d Cir. 1926).

■ Even if Roldan has preserved this point for appeal, we find no error. Roldan's argument is predicated on Michelson v. United States, 335 U.S. 469, 482 (1948) (footnote omitted):

> Since the whole inquiry, as we have pointed out, is calculated to ascertain the general talk of people about defendant, rather than the witness' own knowledge of him, the form of inquiry, "Have you heard?" has general approval, and "Do you know?" is not allowed.

Nevertheless, it has been suggested that "the language appears to represent a summary of existing authority, rather than a direct proscription by the Court of questions in such form," United States v. Madrid Ramirez, 535 F.2d 125, 128 (1st Cir. 1976) (dictum) (trial held before effective date of the Federal Rules of Evidence). Moreover, the Advisory Committee Note to rule 405 implies that rule 405 overruled this aspect of Michelson:

> According to the great majority of cases, on cross-examination inquiry is allowable as to whether the reputation witness has heard of particular instances of conduct pertinent to the trait in question. Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948); Annot. 47 A.L.R.2d 1258. The theory is that, since the reputation witness relates what he has heard, the inquiry tends to shed light on the accuracy of his hearing and reporting. Accordingly, the opinion witness would be asked whether he knew, as well as whether he had heard. The fact is, of course, that these distinctions are of slight if any practical significance, and the second sentence of subdivision (a) eliminates them as a factor in formulating questions.

There is thus no basis in the form of the impeachment questions for reversing Roldan's conviction.

## D.

It is clear that the sole purpose for which evidence of Roldan's prior conviction was admissible was to impeach Cruz' credibility and impair her assessment of Roldan's

good character. Even though Roldan "opened the door," *extrinsic* evidence of his prior conviction is not made admissible by rule 405(a) to show his bad character. United States v. Benedetto, 571 F.2d 1246, 1250 (2d Cir. 1978) (dictum). Contra, United States v. Gilliland, 586 F.2d 1384, 1389 (10th Cir. 1978) (dictum), criticized in S. Saltzburg & K. Redden, Federal Rules of Evidence Manual 67–68 (2d ed. 1977, Supp. 1979). In this respect the Federal Rules of Evidence do not purport to alter the prior common law. Whenever an exception under Fed. R. Evid. 405 allows introduction of prior bad acts, the defendant is entitled to a limiting jury instruction to the effect that the prior bad act testimony does not bear on the defendant's propensity to commit such crimes again. See, e.g., Michelson, 335 U.S. at 472 & n.5; United States v. Bosch, 584 F.2d 1113, 1123 (1st Cir. 1978); United States v. Levy, 578 F.2d 896, 900 (2d Cir. 1978). In this case, no such cautionary instruction was given.

■ Roldan's counsel, however, never submitted oral or written requests to charge and affirmatively stated that he had agreed with the court's instructions. Trial Transcript at 305. Under such circumstances, failure to give a cautionary instruction is not plain error and therefore does not require reversal of Roldan's conviction. United States v. Carter, 401 F.2d 748, 750–51 (3d Cir. 1968) (per curiam), cert. denied, 393 U.S. 1103 (1969); United States v. Cooper, 577 F.2d 1079, 1088–89 (6th Cir.) (citing cases and concluding that almost every Circuit that has considered the issue has refused to find plain error), cert. denied, 439 U.S. 868 (1978).

### III.

Roldan's second assignment of error goes to the sufficiency of evidence of premeditation and deliberation to sus-

tain his conviction for first degree murder under V.I. Code tit. 14, § 922(a)(1).[5]

We note initially that on appeal from a jury conviction, the Government is entitled to the benefit of all reasonable inferences to be drawn from the evidence in the record. Government of the Virgin Islands v. Gereau, 11 V.I. 265, 293 (3d Cir. 1974), 502 F.2d 914, 931, cert. denied, 420 U.S. 909 (1975). The conviction may be based on circumstantial evidence; indeed premeditation generally can be proved only by such evidence:

> To premeditate a killing is to conceive the design or plan to kill. . . . A deliberate killing is one which has been planned and reflected upon by the accused and is committed in a cool state of the blood, not in sudden passion engendered by just cause of provocation. . . . It is not required, however, that the accused shall have brooded over his plan to kill or entertained it for any considerable period of time. Although the mental processes involved must take place prior to the killing, a brief moment of thought may be sufficient to form a fixed, deliberate design to kill. . . .

> The defendant argues that the record is barren of any affirmative proof of premeditation on his part. It is true that there is no direct proof of the defendant's mental processes in this regard. But since these are wholly subjective it is seldom possible to prove them directly. If premeditation is found it must ordinarily be inferred from the objective facts. Every sane man is presumed to intend all the natural and probable consequences flowing from his deliberate acts. . . . Accordingly, if one voluntarily does an act, the direct and natural tendency of which is to destroy another's life, it may fairly be inferred, in the absence of evidence to the contrary, that the destruction of that other's life was intended.

Government of the Virgin Islands v. Lake, 5 V.I. 594, 606 (3d Cir. 1966), 362 F.2d 770, 776 (citations omitted).

---

[5] V.I. Code tit. 14, § 922 provides in relevant part:
(a) All murder which—
(1) is perpetrated by means of poison, lying in wait, torture or by any other kind of willful, deliberate and premeditated killing; . . . is murder in the first degree.
(b) All other kinds of murder are murder in the second degree.

While the authorities are not unanimous, a number of cases in other jurisdictions have emphasized the same factors stressed in Lake, as providing proof of premeditation and deliberation. In Briano v. State, 581 P.2d 5 (Nev. 1978), the Nevada Supreme Court, after recognizing that the question of premeditation is for the jury and that a jury verdict of first degree murder will not be disturbed if there is substantial evidence in the record upon which the verdict could be based, then went on to discuss evidence relevant to the factors of premeditation and deliberation. The court there pointed out that it was the state's obligation to prove "that a design to kill was distinctly and rationally formed in the mind of the perpetrator, at or before the time the fatal blows were struck," id., 581 P.2d at 7 (citations omitted). Noting, as did Lake, that evidence of premeditation and deliberation is generally circumstantial, it listed, among other evidence that may be considered, the probable manner in which injuries were inflicted and the conduct of the defendant after the incident. Of significance to the court in upholding the judgment of Briano's conviction, was the fact that Briano had resumed beating his helpless victim and had thereafter attempted to conceal the entire incident from the police. Additionally, we observe that other courts have held that a jury may infer premeditation merely from the use by the defendant of a deadly weapon, State v. Jackson, 251 Iowa 537, 101 N.W.2d 731 (1960), particularly where such a weapon is used on an unarmed victim and is disposed of thereafter, State v. Hamilton, 216 Kan. 559, 534 P.2d 226 (1975).

This court, speaking through Judge Maris in Lake, affirmed a first degree murder conviction involving the same statute under which Roldan was indicted and convicted. The evidence in Lake was comparable to the evidence in Briano, supra, and even more strikingly similar

to the evidence in this case. In Lake, the body was mutilated with forty-three stab wounds. There was evidence that the victim and her killer were not getting along, but no evidence that the killing had resulted from heat of passion generated by a contemporaneous quarrel. There was also evidence that the defendant in Lake had attempted to conceal the premeditated nature of the killing by fabricating a claim of self-defense.

In the present case, the victim's body was likewise disfigured by numerous deep stab and slash wounds inflicted by a dangerous weapon—a machete. The machete had thereafter been concealed, and no evidence appears in the record that Garcia had been armed. Roldan and Garcia, the victim, had fought over some money about three months before the killing, Trial Transcript at 169 (statement of Roldan to Detective Torres), yet there was no evidence of a quarrel immediately preceding the murder.[6] From the medical evidence in this case, the jury could properly infer that a number of the wounds had been inflicted not only before, but significantly *after* death, id. at 59 (testimony of Dr. Glenn), and there was evidence that Roldan had attempted to conceal the crime by moving the body, id. at 107–08 (testimony of Patrolman Quinones); by hiding the murder weapon, id. at 153–54 (testimony of Officer Rodriguez); by trying to wash blood off his face, id. at 130–31 (testimony of Sergeant Navarro); by attributing the blood on his ears and neck to shaving cuts, though he appeared not to have shaved for two days, id. at 154–55 (testimony of Officer Rodriguez); by washing the floor in his house and the outside ground to remove blood, id. at 157; and

---

[5] Roldan's neighbors testified that they had not heard anything unusual or been awakened that night. Trial Transcript at 30, 33–34 (testimony of Andrea Camacho); id. at 37 (testimony of Luz Maria Cruz). It should be noted, however, that Cruz admitted to having taken sleeping pills that night, id. at 52.

by claiming that the blood in the house came from frozen chickens, id. at 135 (testimony of Sergeant Navarro).

■ On this record, and in light of Lake, supra, we cannot say that there was not sufficient evidence for the jury to find premeditation beyond a reasonable doubt.

## IV.

We have concluded that the trial court did not err in permitting the Government to cross-examine Cruz regarding Roldan's prior conviction. We have also concluded that there was sufficient evidence of premeditation to support Roldan's conviction for first degree murder. We will therefore affirm the district court's March 16, 1979 judgment of sentence imposed upon Roldan.