*983 OPINION
By the Court,
Rose, J.:
William Christopher Schoels and Gregory Hayes were playing basketball at a sports complex in Las Vegas when they engaged in an argument. Schoels announced that he was going to leave and began walking toward the opposite end of the basketball court. According to witnesses, Hayes followed Schoels, “talking trash,” and threatening to return with a gun. Schoels then pulled a gun and shot Hayes in the right shoulder. Hayes fell forward, grabbing Schoels around the legs, and Schoels then shot him in the back, killing him.
Schoels was arrested, and a jury convicted him of first-degree murder with the use of a deadly weapon and possession of a firearm by an ex-felon. Schoels was sentenced to life in prison without the possibility of parole for the murder conviction, life without the possibility of parole for use of a deadly weapon, and six years in prison for the possession of a firearm by an ex-felon.
*984 Schoels now appeals his convictions and sentences, arguing that the district court abused its discretion and committed reversible error both in the guilt and penalty phases of his trial.

Denial of Plea Change

On October 19, 1993, Schoels pleaded not guilty to the charge of ex-felon in possession of a firearm. Twenty-three months later, just before jury selection and after both parties had prepared their cases for trial, Schoels petitioned the court to change his plea on that charge. The district court denied the request, stating that allowance of the change at such a late point in the proceedings would be “highly detrimental to the State.”
Schoels argues that the district court’s denial of this request contaminated the jury and denied him a fair trial. He argues that a plea of guilty would have allowed the jury to deliberate the degree of the alleged homicide without being influenced by knowledge of his ex-felon status.
“[Accepting a tendered plea of guilty is within the sound discretion of the trial court.” Sturrock v. State, 95 Nev. 938, 940, 604 P.2d 341, 343 (1979) (footnote omitted); NRS 174.035(1).[1] A defendant does not have a right to have his guilty plea accepted. North Carolina v. Alford, 400 U.S. 25, 38 n.11 (1970); Jefferson v. State, 108 Nev. 953, 954, 840 P.2d 1234, 1235 (1992). A trial judge has authority to assure protection of public interests including assuring fairness to the prosecution. Sparks v. State, 104 Nev. 316, 759 P.2d 180 (1988).
NRS 174.035(1) provided the district court the discretion to deny Schoels’ plea. Because the trial court has discretion to decline to accept a plea change when necessary to protect the public interest, we hold that the district court did not abuse its discretion by denying Schoels’ guilty plea.

Jury Instructions

Schoels argues that the district court improperly instructed the jury regarding the elements of first-degree murder, the elements of voluntary manslaughter and the applicability of self-defense to the charges.
Schoels concludes that the district court failed to instruct the jury that first-degree murder must be “willful, deliberate and pre *985 meditated.” See NRS 200.030. Schoels contends that the district court, by defining only “premeditation” and by failing to define “willful” and “deliberate,” rendered NRS 200.030 meaningless and blurred the distinction between first- and second-degree murder. Schoels further contends that the district court misled the jury when it defined premeditation as “instantaneous as successive thoughts of the mind.”[2]
It is not necessary to offer discrete definitions of deliberateness or willfulness so long as the jury instruction on premeditation is proper. See Powell v. State, 108 Nev. 700, 709-10, 838 P.2d 921, 927 (1992), vacated on other grounds, 511 U.S. 79 (1994); see also Doyle v. State, 112 Nev. 879, 921 P.2d 901 (1996); Witter v. State, 112 Nev. 908, 921 P.2d 886 (1996); DePasquale v. State, 106 Nev. 843, 803 P.2d 218 (1990), cert. denied, 502 U.S. 829 (1991) (using premeditated and deliberate as a single term); Briano v. State, 94 Nev. 422, 581 P.2d 5 (1978) (same). Premeditation requires the state to “prove that a design to kill was distinctly and rationally formed in the mind of the perpetrator, at or before the time the fatal blows were struck. . . . [regardless of] how short a time existed between the formation of the design to kill and the killing itself.” Briano, 94 Nev. at 425, 581 P.2d at 7 (citations omitted).
In Powell, this court examined an instruction identical to the instruction challenged by Schoels and held that it was a proper definition of premeditation. Id., 108 Nev. at 710, 838 P.2d at 927. Accordingly, we hold that the district court did not err by failing to define willfulness or deliberateness.
Schoels also contends that the district court erred by failing to include his proposed language in the jury instruction regarding voluntary manslaughter.[3] At trial, Schoels argued that the victim’s *986 threat of physical violence to Schoels was sufficient provocation to justify a finding of voluntary manslaughter. The defense proposed the following addition to the instruction: “The serious and highly provoking injury which causes the sudden heat of passion for purposes of voluntary manslaughter can occur without direct physical contact.” The proposed language is consistent with Nevada law. See Roberts v. State, 102 Nev. 170, 717 P.2d 1115 (1986) (a serious and highly provoking injury need not be a direct physical assault by the victim). The State argues that the reference to attempt in the jury instruction[4] sufficiently conveys that no direct physical assault is necessary to provoke manslaughter, and that the proposed language was therefore superfluous.
We conclude that the jury instruction failed to convey unambiguously that a direct physical assault by the victim was unnecessary. However, it seems obvious that had the jury received a proper instruction, it would not have reached a different conclusion at trial. Horvath v. Burt, 98 Nev. 186, 643 P.2d 1229 (1982) (reversal is not required unless a different result would be likely absent the contested instruction). Therefore, we conclude that Schoels’ argument lacks merit.
Schoels next contends that the district court improperly instructed the jury regarding self-defense.[5] Schoels argues that the language “actual danger is not necessary to justify self defense” should have been added to the instruction and was necessary to his defense. An instruction that a defendant may only use self-defense to justify a homicide when he is in actual danger of being killed or seriously injured by his assailant is improper. Culverson v. State, 106 Nev. 484, 797 P.2d 238 (1990). Schoels contends *987 that the court’s refusal to include his proposed language resulted in an unfair trial.
The State argues that the language in the jury instruction, stating that “the right of self defense upon such appearances and from such fear and honest convictions ... is the same whether such danger is real or merely apparent,” explained that apparent danger justifies self-defense as much as actual danger. We agree, and conclude that Schoels’ challenge of the jury instruction plainly lacks merit.

Prosecutorial Misconduct

Schoels claims that the prosecution engaged in several forms of misconduct at trial. He argues that the prosecution made statements that referred to the jury as the conscience of the community or sought to align the jury with the prosecution, and inappropriately forecast his future dangerousness.
Schoels’ first allegation of misconduct is that the prosecutor improperly referred to the jury as “the conscience of the community,” violating the well-established prohibition against such tactics. See Haberstroh v. State, 105 Nev. 739, 782 P.2d 1343 (1989), cert. denied, 510 U.S. 858 (1993); see also Snow v. State, 101 Nev. 439, 705 P.2d 632 (1985), cert. denied, 475 U.S. 1031 (1986). However, in first-degree murder cases where the jury is to consider the sentence to be imposed, we have previously held that it was not reversible error for a prosecutor to argue community standards to assist the jury in imposing the punishment. See Lisle v. State, 113 Nev. 540, 937 P.2d 473 (1997); Domingues v. State, 112 Nev. 683, 917 P.2d 1364 (1996). Upon consideration of the numerous instances cited by Schoels, we conclude that the prosecution made no improper argument and that Schoels’ claim of error on this ground is therefore meritless.
Schoels’ second allegation of misconduct is that the prosecution improperly used collective terms such as “we,” “us,” and “our” in its closing argument.[6] It is improper for the State to argue in a fashion that suggests the jury should align itself with the prosecution. Snow, 101 Nev. at 447, 705 P.2d at 639.
The State argues that it did not use the words “we,” “us,” and “our” to align the jury with the prosecution. Collective pronouns *988 such as “we” and “our” are appropriate if they are used to indicate citizens or human beings rather than to align the prosecution with the jury in determining a defendant’s punishment. Id. at 447, 705 P.2d at 639. We conclude that the prosecution’s use of “we,” “us,” and “our” did not constitute prosecutorial misconduct.
Schoels’ third allegation of misconduct involves the prosecution’s prediction of his future dangerousness as a basis for imposition of the death penalty. The prosecution argued to the jury, over Schoels’ objection, that it was necessary to put Schoels to death in order to prevent him from killing others in the future, thereby saving innocent victims from the murderous hands of William Schoels. The way to protect innocent victims of homicide in the future, according to the prosecutor, was for the jurors to vote for the death penalty so that “no one else has to die at his hands.”
In this case, Schoels carried a pistol in his pocket while playing basketball in the gym. When a heated argument with the victim developed, Schoels pulled out his pistol and shot the unarmed man at point blank range in the shoulder and then in the back.[7] The jury was also informed that Schoels had been convicted of armed robbery a few years earlier. Under these circumstances, it was proper for the prosecution to argue the future dangerousness of Schoels.[8] However, the argument on future dangerousness below suggested, at least by strong implication, that the jury would be responsible for the deaths of future innocent victims if a death penalty verdict was not returned. A prosecutor may not argue or suggest to the jury that the jury is or would be responsible for any future victims of the defendant. We disapproved of this type of comment in Howard v. State, 106 Nev. 713, 718-719, 800 P.2d 175, 178 (1990), and more recently in Castillo v. State, 114 Nev. 271, 280, 956 P.2d 103, 109 (1998). A prosecutor may not argue that the jury, by its verdict, will be choosing whether to execute the defendant or some innocent victim in the future. This prohibition includes the argument that it is necessary to execute the defendant to protect innocent victims from death at the defendant’s hands in the future. A prosecutor may still argue that the defendant, if not executed, will pose a threat to the lives of oth *989 ers in the future or that he will kill again. What are prohibited are arguments which, directly or by implication, place responsibility on the jury for the deaths of unknown future victims. As we have held in the past, this type of prosecutorial misconduct is subject to harmless error analysis. However, we will reverse the conviction or death penalty where the decision between life or death is a close one or the prosecution’s case is weak. See Jones v. State, 113 Nev. 454, 469-470, 937 P.2d 55, 65 (1997). To the extent that any of our previous cases discussing this issue may be read as inconsistent with this analysis, they are superseded.
Following this analysis, the prosecutor’s argument was improper when he stated that it was necessary to execute Schoels to protect future victims. However, it was only stated once, the remaining argument was proper, and Schoels was not assessed the death penalty. Given the sufficient evidence supporting the verdict returned by the jury and the fact that the prosecutor made but one transgression in his closing argument, we deem this error harmless.

Penalty Phase Prejudice

Prior to trial, the district court denied Schoels’ motion to argue last during the penalty phase. Schoels contends that it is fundamentally unfair to deny a person facing the death penalty the last chance to plead for his life. Schoels notes that NRS 200.030(4)(a) and NRS 175.554(3) place the burden on the defendant to prove that mitigating circumstances outweigh aggravating circumstances to avoid the death penalty, and argues that this burden should result in the defendant being allowed to argue last during the penalty phase.[9]
NRS 175.141(5) sets forth the procedure to follow during a trial. We concur with the State’s argument that, because the penalty hearing is part of the trial, NRS 175.141(5) governs the penalty hearing as well. NRS 175.141(5) states that “the district attorney, or other counsel for the State, must open and conclude the argument.” (Emphasis added.) Thus, NRS 175.141(5) mandates that the State argue last during the penalty phase where the death penalty is involved. See Witter v. State, 112 Nev. 908, 921 *990 P.2d 886 (1996), cert. denied, 520 U.S. 1217, 117 S.Ct. 1708 (1997). Accordingly, we conclude that Schoels’ argument lacks merit.
Schoels further contends that the district court erred by permitting the prosecution to allege, without probable cause, aggravating factors and by “death qualifying” the jury, thereby tainting his due process right to a fair trial. Schoels argues that evidence of aggravating factors should be presented before a neutral magistrate to determine whether there is probable cause for death qualification of jurors. However, Schoels offers no authority in support of his proposal. Accordingly, we decline consideration of his argument. Cunningham v. State, 94 Nev. 128, 575 P.2d 936 (1978) (this court will not consider an issue if no relevant authority is presented on appeal).
Schoels also argues that the district court erred by accepting the prosecution’s notice of intent to seek the death penalty based on aggravating factors which should not have been considered. Further, Schoels challenges the State’s allegation of an aggravating circumstance based on a great risk of death to more than one person. See NRS 200.033(3). We recently held in Phenix v. State, 114 Nev. 116, 954 P.2d 739, (1998) that an appellant could not challenge jury instructions on aggravating circumstances where he had not received a death sentence below. In applying the same reasoning to the instant case, we decline to reach the merits of Schoels’ arguments pertaining to the aggravating circumstances because he was not sentenced to death.
We have reviewed all of the other arguments and issues raised by the parties and conclude that they are without merit. We affirm the judgment of conviction and the sentence imposed.
Young and Maupin, JJ., concur.

 NRS 174.035(1) provides: “A defendant may plead not guilty, guilty, guilty but mentally ill or, with the consent of the court, nolo contendere. The court may refuse to accept a plea of guilty or guilty but mentally ill.”

 Jury Instruction No. 8 provided:
Premeditation is a design, a determination to kill, distinctly formed in the mind at any moment before or at the time of the killing. Premeditation need not be for a day, an hour or even a minute. It may be as instantaneous as successive thoughts of the mind. For if the jury believes from the evidence that the act constituting the killing has been preceded by and has been the result of premeditation, no matter how rapidly the premeditation is followed by the act constituting the killing, it is willful, deliberate and premeditated murder.

 Jury Instruction No. 19 provided:
Voluntary manslaughter is the unlawful killing of a human being without malice, express or implied, without any admixture of deliberation. It must be voluntary, upon a sudden heat of passion caused by a provocation apparently sufficient to make the passion irresistible. In cases of voluntary manslaughter, there must be a serious and highly pro *986 voking injury inflicted upon the person killing, sufficient to excite an irresistible passion in a reasonable person, or an attempt by the person killed to commit a serious personal injury on the person killing.
The killing must be the result of that sudden, violent impulse of passion supposed to be irresistible; for, if there should appear to have been an interval between the assault or provocation given and the killing, sufficient for the voice of reason and humanity to be heard, the killing should be attributed to deliberate revenge and punished as murder.

 “[T]here must be ... an attempt by the person killed to commit a serious personal injury to the person killing.”

 Jury Instruction No. 27 provided:
If one is confronted with the appearance of danger which arouses in one’s mind, as a reasonable person, an honest conviction and fear that one is about to suffer great bodily injury, and if a reasonable person in a like situation, seeing and knowing the same facts, would be justified in believing oneself in like danger, and if the person so confronted acts in self-defense upon such appearances and from such fear and honest convictions, the right of self-defense is the same whether such danger is real or merely apparent.

Schoels refers to many instances of the prosecutor’s use of “we,” “us,” and “our,” such as: “We watch and we administer, we get satisfaction in revenge . . . “[T]he death penalty is reserved for the worst of us.”; “Think about that and relate it to our case.”

 Thus, contrary to the dissent, Schoels was not, at the time of this homicide, locked in a life-or-death situation from his standpoint.

 In Redmen v. State, 108 Nev. 227, 235, 828 P.2d 395, 400 (1992), overruled on other grounds by Alford v. State, 111 Nev. 1409, 1415 n.4, 906 P.2d 714, 717 n.4 (1995), we concluded, and now re-affirm, that prosecutors may argue future dangerousness in death penalty litigation where there is no evidence of violence independent of the murder in question.

 Schoels urges this court to follow two jurisdictions that require the defense to argue last during the penalty phase where the death penalty is involved. A Kentucky statute provides that “the prosecuting attorney shall open and the defendant shall conclude the argument.” Ky. Rev. Stat. 532.025(1)(A). The California Supreme Court determined that “[e]qual opportunity to argue is . . . consistent with the Legislature’s strict neutrality in governing the jury’s choice of penalty .... Accordingly, hereafter the prosecution should open and the defense respond. The prosecution may then argue in rebuttal and the defense close in surrebuttal.” People v. Bandhauer, 58 Cal. Rptr. 332, 337 (1967), cert. denied, 389 U.S. 878 (1967).