**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**MAXIMILIANO VELASQUEZ, III, Defendant**

**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**JUAN G. VELASQUEZ, Defendant**

**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**JOSE MANUEL RIVERA, Defendant**

**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**SHARIMA SEATON, Defendant**

**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**JOSE VENTURA, Defendant**

Case Nos. SX-12-CR-0000076, Criminal Nos. SX-12-CR-063, SX-12-CR-064, SX-12-CR-065, SX-12-CR-066, SX-12-CR-076

Superior Court of the Virgin Islands

Division of St. Croix

July 31, 2012

106

BRADY, *Judge*

## MEMORANDUM OPINION

(July 31, 2012)

**THIS MATTER** came before the Court on February 29, 2012, for a Hearing on the People's Motion for Detention.

## FACTUAL AND PROCEDURAL BACKGROUND

On or about June 21, 2001, Ms. Jaslyn Williams reported to the Virgin Islands Police Department that her brother, Corporal Wendell Williams was missing. Four days later, June 25, 2001, Corporal William's car was discovered, burned and otherwise destroyed, in the Castle Burke subdivision of St. Croix. *See Detention Hr'g Tr. 12, 53.* Thereafter, an automotive protection device, commonly referred to as "the club," belonging to Corporal Williams was discovered on the eastern side of the island. Since that time, Corporal Williams has not reported to work or claimed wages owed to him by the Police Department or any other employer. Nor has he been seen by anyone, at any time carrying out any tasks that he habitually performed such as paying bills, appearing in the territory or attending to his personal relationships. Similarly, Corporal Williams failed to attend a fully funded vacation that was scheduled shortly after his disappearance that was to include a brief stay in Puerto Rico and cruise with a companion.[1]

Following his disappearance, a massive search was conducted by various law enforcement agencies which included dispatch of search, rescue and cadaver dogs, brought to bear in an effort to locate trace elements of Corporal Williams' body on the island of St. Croix. The Federal Bureau of Investigation (FBI) and Virgin Islands Police Department collected evidence and produced documents and reports featuring eyewitness accounts of alleged events which led to the death

---

[1] *See Hurley v. State*, 60 Md.App. 539, 483 A.2d 1298 (1984) (where the Court emphasized that the victim's failure to maintain habits and regular contact with family and friends, or attendance at work, planned engagements and activities was essential evidence where no body is found).

and disappearance of Corporal Williams. Essentially, these accounts indicate that Corporal Wendell Williams was kidnapped, tortured, shot and ultimately dismembered.

A large portion of information submitted to this Court on the disappearance of Corporal Williams was gleaned from eyewitness statements and featured in investigative reports compiled by the Virgin Islands Police Department and federal agents. The substance of these statements, made by an eyewitness described as SOI (Source of Information) and revealed in pre-trial detention hearings, by the testimony of investigating officers, generally paints a graphic picture of the incidents leading to the death of Corporal Williams. They indicate that Corporal Williams was bound to a metal pole with his arms tied behind his back, in a warehouse type building with exposed electrical boxes along the wall. Eyewitness accounts allege that Corporal Williams was beaten with extension cords and tortured by electrocution. Thereafter, he was shot in the hand and was ultimately shot in the head. Finally, the witness asserts that the Corporal's body was severed by an electric saw and placed into garbage bags before being thrown into the sea for disposal. *Detention Hr'g Tr. 49*. After several visits to potential trial witnesses by various Police Department personnel, a new investigation into these events was commenced by the FBI.

On February 6, 2012, this Court issued arrest warrants for five (5) named Defendants, and other persons to be determined by further investigations, for the crime of Murder in the First Degree, in violation of 14 V.I.C. §§ 922(a)(2) and 11(a). Bail was set at One Million Five Hundred Thousand Dollars ($1,500,000) for each Defendant. The affidavit supporting the arrest warrant and other requests by the People was signed by Detective Frank Ortiz.

The Court initially scheduled a hearing on February 16, 2012, for argument on the People's "Motion to Seal the Affidavit Supporting the Arrest Warrant" and to Compel and Seal DNA Samples from the Defendants. The People also submitted a Motion for an *In Camera* review of witness statements in support of their Motion for Pre-Trial Detention of the Defendants. However, that hearing was rescheduled because two (2) of the Defendants were represented by off-island counsel who were unable to appear on the abbreviated notice. The Court continued the matter until such time as all Defendants could be represented by counsel. Defense counsels for Maximiliano Velasquez III and Sharima Seaton-

Clercent requested that the Court stay all motions before the Court. That request was granted. A Detention Hearing was scheduled for February 29, 2012, by this Court.

Prior to the Detention Hearing on February 29, 2012, the People provided a redacted affidavit to Defendants and their Counsels written by Detective Ortiz that included references to statements of the People's eyewitness. Defense Counsels appeared before the Court and requested arraignment of their clients before the formal hearing on the People's Motion to Detain Defendants. At arraignment each Defendant by and through his/her counsel pled not guilty, waived reading of the information and entered a request for a speedy jury trial.

Upon conclusion of arraignment proceedings the People presented evidence in support of their Motion to Detain. The People presented testimonial evidence from two witnesses in addition to eyewitness statements submitted to the Court for an *In Camera* review. Thus, this Court's decision on the Defendants' detention is predicated on the testimony of those witnesses, cross examinations by opposing counsels, statements of the People's witness and written arguments in opposition submitted by Defense counsels. The following is a brief synopsis of the evidence presented by the People through sworn testimony, which the Court found to be probative. As will be shown, most of the evidence was either perceived by the People's witness or gathered by way of investigation and reporting from the Virgin Islands Police Department and other agencies.[2]

The People's first witness was Detective Frankie Ortiz, Lead Criminal Investigator-Cold Case Squad, Virgin Islands Police Department. Detective Ortiz testified about his knowledge of previous investigations by various local and federal investigation units and about information which led to the re-opening of the instant case. Detective Ortiz also testified as to the methods he observed utilized by federal agents who collected samples from the alleged crime scene (where Corporal Williams was allegedly murdered), and conducted searches of the premises and complied witness statements and reports. Further, Detective Ortiz testified using photographs of the alleged crime scene and presented information

---

[2] Any other testimony produced at the Detention Hearing and not recounted herein was deemed by the Court to be insufficiently probative or reliable for the Court's consideration. A Certified Transcript of the Detention Hearing will accompany this Memorandum Opinion.

based on his observations and experience of the investigation into events that preceded and followed the disappearance and death of Police Corporal Williams. *See Detention Hr'g Tr. 11-16, 28-35; People's Ex. 113-116.*

Defense Counsels had the opportunity to cross examine Detective Ortiz on the breadth of his knowledge of certain facts, methods and information. Moreover, Defense Counsels stipulated to the presentation of photographic evidence and exhibits of the alleged crime scene and its evidentiary bases. Further, Defense Counsels examined Detective Ortiz on his knowledge of the whereabouts, credibility and relationship of the chief witness, upon whose statements the investigation relied as to the Defendants. Several exhibits were admitted by the People, most of them without objection. *Detention Hr'g Tr. 25-28.*

The People also presented testimonial evidence from Virgin Islands Police Sergeant Stephen Brown. Sgt. Brown testified about his observations of certain forensic tests performed at the alleged crime scene and paraphernalia collected by investigators therein. *Detention Hr'g Tr. 102-105.* At the conclusion of testimony the People rested and Defense Counsels had the opportunity to cross examine Sgt. Brown on all matters related to his sworn testimony before the Court. *Detention Hr'g Tr. 107-108.* Notably, Defense Counsel for Defendant Velasquez III, questioned Sgt. Brown on the latent blood testing he observed at the alleged crime scene, specifically asking whether the reactive test responded to human blood or rather any blood and blood plasma. Sgt. Brown replied that to his knowledge the specimen identified was of the latter type. *Detention Hr'g Tr. 107.* At the conclusion of the People's presentation, this Court ordered Defense Counsels to file briefs in opposition to the People's Motions and arguments where they reiterated arguments in opposition to the Defendants pre-trial bail and release from detention. *Detention Hr'g Tr. 108.* These briefs were reviewed and considered.

## STANDARD OF REVIEW

In *Tobal v. People of the Virgin Islands*, 51 V.I. 147 (V.I. 2009), the Supreme Court invalidated the long standing practice of the Superior Court (pursuant to Title 3, of the Revised Organic Act, section 25, of detaining defendants charged with other major felonies and limited pre-trial detention *only* to defendants charged with First Degree Murder.

In a prior decision, *Browne v. People*, 50 V.I. 241 (V.I. 2008), the Defendant/Appellant was charged with and convicted by a jury of Murder First Degree, among other crimes, the Court articulated the applicable law on detention holding:

> ... section 3 of the Revised Organic Act governs the issue of pretrial detention for first degree murder defendants in local Virgin Islands courts, and that title 5, section 3504a is inapplicable to the extent that it purports to grant pretrial bail for defendants charged with first degree murder in the Superior Court under Virgin Islands law where the proof is evident or the presumption great. *Browne*, 50 V.I. at 257-258.

In a subsequent case the Supreme Court of the Virgin Islands remanded a detention determination by the trial court, citing a prominent First Circuit Court of Appeals case:

> Faced with the government's reliance upon hearsay evidence at a pretrial detention hearing the First Circuit Court of Appeals aptly explained the rationale for admission of hearsay evidence at such proceedings:
>
> > [the] authority rests primarily upon the need to make the bail decision quickly, at a time when neither party may have fully marshaled all the evidence in its favor. It may also reflect the realization that at least some hearsay on some occasions may be fairly reliable, perhaps more reliable than certain direct evidence. For example, well-kept records, though hearsay, may be more reliable than eyewitness accounts of, say, a road accident on a foggy night. In any event, the need for speed necessarily makes arraignments, "probable cause" determinations, and bail hearings typically informal affairs, not substitutes for trial or even discovery.

*Williams v. People*, 53 V.I. 514, 527 (V.I. 2010) quoting *United States v. Acevedo-Ramos*, 755 F.2d 203, 206 (1st Cir. 1985).

Relying on the Uniform Rules of Evidence (5 V.I.C. §§ 931-935) which permit the admission of hearsay at pre-trial detention hearings, *Browne* upheld the trial court's acceptance of hearsay testimony in detention hearings. In a unanimous decision the Supreme Court set the standard for Superior Court Judges making determinations on detention in hearing such as the instance case by holding:

113

... when the People elect to present exclusively hearsay evidence at a pre-trial detention hearing, the trial court, when determining whether the evidence is clear and convincing, must undertake by whatever means are appropriate under the circumstances to ascertain the reliability of the underlying hearsay statements when their accuracy is in question. *Williams*, 53 V.I. at 532-33.

It should be noted that the Court added:

[The] trial judge should focus on the strength of the People's evidence, rather than the defendant's ultimate guilt or innocence, and may not resolve direct conflicts as to inculpatory or exculpatory facts. *Williams*, 53 V.I. at 522.

## ANALYSIS

### I. Hearsay Evidence

In briefs submitted to this Court at the conclusion of the Detention Hearing, several Defense Counsels objected to the use of hearsay testimony. However, those objections are in contradiction to the authority of the Rules of Criminal Procedure, Federal Rules of Evidence, and relevant case law that expressly allows for such testimony to be considered.[3]

■ Title 18 U.S.C. § 3142(f), under the heading Detention Hearing, clearly states that in hearings such as the one before this Court, "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." *See United States v. Perry*, 788 F.2d 100, 106 (3rd Cir. 1986) (18 U.S.C. § 3142(f), which "explicitly permits use of evidence [in pre-trial detention hearings] that would not be permissible in a criminal trial"); *see also United States v. Delker*, 757 F.2d 1390, 1397 (3rd Cir. 1985); and *People v. Matthew*, 49 V.I. 285 (Super. Ct. 2008). Courts continually rely on circumstantial evidences in order to reach a reasonable conclusion of clear and convincing evidence. *See, e.g., Government of the Virgin Islands v. Roldan*, 612 F.2d 775, 781, 16 V.I. 683 (3d Cir. 1979).

---

[3] The Virgin Islands Legislature in 2010 adopted the Federal Rules of Evidence for use in the Superior Court. Previously the Uniform Rules of Evidence were applied to criminal matters.

Additionally, Federal Rule of Evidence 804(b)(3) permits inclusion of statements that might otherwise be considered hearsay if they are made by a person against hislher own interests. In the instant case the eyewitness statements were furnished by the People's witness in contravention to the threat of civil or criminal liability. Most recently, our Supreme Court has expressly permitted hearsay evidence in detention hearings in the *Browne* and *Williams* cases.

■ The Court in *Williams* is particularly instructive in cases where the People's presentation of evidence is exclusively hearsay. Admonishing the Superior Court to "undertake by whatever means are appropriate under the circumstances to ascertain the reliability of the underlying hearsay statement." *Williams, supra,* 53 V.I. at 532-33. Here, the testimony presented to this Court by Detective Ortiz and Sgt. Brown is substantiated by their follow-up investigation of the People's eyewitness. Prior to the reopening of this case, both officers participated in interviews and investigation of statements made by the People's eyewitness which corroborated certain facts with physical evidence. The eyewitness provided descriptions of the alleged crime scene, providing landmarks which led the investigators to verifiable elements of the alleged incident and demonstrate a measure of reliability.

At the Detention Hearing Detective Ortiz testified that the People's eyewitness provided him with a description of particular building structures, and interior features of the alleged crime scene including descriptions of electrical boxes on the wall, the placement of a metal pole in the center of the room and the presence of five gallon buckets which were used to dilute and dispose of blood and blood spatters. Additionally, the Detective testified that the eyewitness accounts alerted the Officers to the presence of an ammunition indentation in the floor that would be consistent with the events as described by the eyewitness in statements to investigators. Later on these statements were tested and confirmed in reenactments at the alleged crime scene. Thus, the statements of the People's eyewitness when considered with the testimony provided by those persons who investigated them certainly meet the standard of appropriate means taken to ascertain the reliability of the underlying hearsay as required by *Williams*.

## II. Corpus Delecti

There is only one case of record in this jurisdiction where the People charged and convicted a defendant of murder, first degree when the body

of the deceased was never found. *Government of the Virgin Islands v Harris*, 938 F.2d 401 (3rd Cir. 1991). In that case the Defendant, Raphaello Harris, Sr. was convicted of First Degree Murder and possession of a dangerous weapon during the commission of a crime of violence although the victim, the Defendant's ex-wife, Judith Harris, was never seen or heard from following her arrival to the Cyril E. King Airport in St. Thomas, Virgin Islands. Her body was never found and the two were not seen together on the day of her death, yet Mr. Harris was convicted on both counts and sentenced to life imprisonment.

In *Harris* the Government established the death of the victim by corpus delecti, defined as "the body or substance of the crime charged," which has two components: (1) an unlawful injury, and (2) an individual's unlawful conduct as a source of that injury. Establishing a corpus delecti requires proof that a specific injury, loss, or harm resulted, and that the injury was caused by a criminal agency rather than by an innocent or accidental one. *See* 1C. TORCIA, WHARTON'S CRIMINAL EVIDENCE § 28 (14th ed. 1985 & Supp. 1990); 7J WIGMORE, EVIDENCE § 2071 (Chadbourn rev. ed. 1978 & Supp. 1990). However, in order for the Government to establish corpus delecti, it only need prove that a crime has been committed. *United States v. DiOrio*, 150 F.2d 938, 939 (3d Cir. 1945), *cert denied*, 326 U.S. 771, 66 S. Ct. 175, 90 L. Ed. 465 (1945). At trial, the People were unable to provide a single witness to the crime. Rather the bulk of the People's presentation was made with circumstantial evidence of the decedent's intended itinerary, habit and routine and the testimony of family and friends who had knowledge of the nature of the dysfunctional relationship between the ex-husband and wife. Moreover, this evidence was bolstered by confessional statements made by the Defendant to members of the public.

The Virgin Islands statutes are silent on whether a body must be found and identified to establish the corpus delecti of homicide for a First Degree Murder conviction under the Virgin Islands Code, although it may be based on circumstantial evidence. *See Roldan*, at 781. Absent governing statute or precedent specifically establishing guidance on how a person can be legally deemed dead, we must look to a "hierarchy of sources for Virgin Islands law" which originates with V.I. CODE ANN. tit.

1, § 4 (1967).[4] Under § 4, we look first to the common law rules set forth in the RESTATEMENTS. If no rules are available, we look next to the common law rules "as generally applied in the United States." *Id. See also Polius v. Clark Equipment Co.*, 802 F.2d 75, 77 (3d Cir. 1986) (Where the Virgin Islands "has no statute . . . [and] [w]here the Restatement is silent and a split of authority exists, courts should select the sounder rule.") In the instant case, the Court will look to local law and beyond for procedural grounding.

■ Typically, the prosecution must show that a person is dead and that the death can be attributed to unlawful conduct. Courts have relied on circumstantial evidence in proving corpus delecti for first degree murder in both federal and state cases, including the Virgin Islands as seen in *Roldan* and *Harris*.[5] Thus, it is not necessary for the People to produce the body to achieve a homicide conviction. And certainly not in a case where the People's presentation, at the stage of pre-trial hearing, indicates that the disposal of the body is an integral part of the evidence before the Court. *See Harris* (quoting *People v. Manson*, 71 Cal. App. 3d 1, 42, 139 Cal. Rptr. 275 (2nd Dist. 1977)). Therefore, this Court accepts as true the fact that Corporal Wendell Williams is dead and concludes that his body need not be produced for the People to prove his murder.

## III. The People's Eyewitness

■ Given that this Court accepts the People's proffer of evidence, as to the alleged events it follows that the Court accepts the People's eyewitness statements about the actions or activities of the named Defendants submitted by written reports. The People's eyewitness specifically alleges that Jose Manuel Rivera fatally shot Corporal Williams. The eyewitness also identified Rivera in a photo array. Additionally, the eyewitness alleges that Maximiliano Velasquez III, also identified in a photo array, participated in the murder, was present at the alleged crime scene and instructed the other participants on how to conceal evidence of the crime. The eyewitness also indicated that Juan

---

[4] *See Edwards v. Born, Inc.*, 792 F.2d 387, 389 (3d Cir. 1986).

[5] The following twenty two (22) states hold that the body of a missing person need not be produced to convict for murder: Alabama, Arkansas, California, Illinois, Indiana, Kentucky, Maine, Maryland, Michigan, Mississippi, Montana, New Jersey, New York, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Texas, Utah, Virginia, and Washington.

Velasquez was present and participated in the murder of Corporal Williams, a statement which is corroborated by the discovery of a saw that the prosecution alleges was used in the crime, found by the Police at the home of Juan Velasquez.[6] *See also Detention Hr'g Tr. 49-50.* The witness also stated that Jose Rivera and Jose Ventura removed the restraints on the body of Corporal Williams prior to its dismemberment and removal from the alleged crime scene. *Detention Hr'g Tr. 48.* Based on this evidence, the Court finds that the detention is appropriate for Defendants Jose Manuel Rivera, Maximiliano Velasquez III, Juan Velasquez and Jose Ventura.

The People, however, have not met their burden for detention of Defendant Sharima Seaton-Clercent. The People's evidence, to date, is insufficient to deny the opportunity for bail because neither the testimony presented at the Detention Hearing nor the statements of the eyewitness presents this Court with sufficient proof that the community at large would be jeopardized by providing the opportunity for bail to Defendant Clercent.

 Throughout these proceedings Defense Counsels have sought disclosure of the names of the People's witnesses. These requests have been denied for several reasons. Witness disclosure is heavily protected by the Federal Rules of Criminal Procedure under 18 U.S.C. § 119(a), revealing personal information about a "covered person" is a crime punishable by imprisonment of no more than five (5) years. A "covered person" is defined therein as an informant or witness. It is evident that these statutes are designed to maintain the safety of informants and witnesses in order to allow such persons to tender evidence rather than fail to come forward out of fear of bodily harm or death. Statements made by government witnesses or prospective government witnesses are protected in order to facilitate procurement of highly pertinent information. Under 18 U.S.C. § 3500, no statement by any government witness, other than the defendant, can be the subject of subpoena, discovery, or inspection until after the witness has testified under direct examination during trial. Only then is it proper for Defense Counsels to petition the People to produce witness statements. The reality of this case

---

[6] During the Detention Hearing Det. Ortiz testified, that several search warrants executed on February 10, 2012, yielded discovery of a number of saws, one which was tested by a forensic technician and may be the saw used in the alleged crime.

is that Defense Counsels were provided an Affidavit that substantially supported the representations of the People's witnesses, by the Police Officers that testified at the Detention Hearing. Under the circumstances present in the instant case and the nature of the crime alleged — the People have ample justification to protect the identity of its prospective trial witness, despite the well-considered protestations of Defense Counsels. Matters of Discovery will be ordered by the Court to ensure that the Defendants and their counsels are provided with all constitutionally required information by the prosecution.

## CONCLUSION

The Defendants are charged with First Degree Murder, which is the only charge whereby pretrial detention is allowed, Count One of the Information charges that the Defendants, "while aided and abetted by each other and others known and unknown, with malice aforethought, and with willful and deliberate and premeditated design, kill Officer Wendell Williams, a human being, by torturing and shooting him with a firearm." Count two of the Information adds that these acts were committed "with malice aforethought in perpetration of a kidnapping" *See* Superseding Information, filed February 13, 2012.

Before concluding this Opinion the Court expresses its unequivocal approval of an excerpt from a California case affirming the convictions of the murder by infamous Charles Manson and his female associates:

> One rationale provided for the no body-required rule is that a Murderer should not be entitled to acquittal simply because he successfully disposes of a victim's body. That is one form of success for which society has no reward. *People v. Manson*, 71 Cal. App. 3d 1, 42, 139 Cal. Rptr. 275, 298 (2nd Dist. 1977), *cert. denied*, 435 U. S. 953, 98 S. Ct. 1582, 55 L. Ed. 2d 803 (1978) (citing *People v. Cullen* (1951) 37 Cal. 2d 614, 624, 234 P.2d 1)).

News of the disappearance of Corporal Williams was widely disseminated by all media outlets in the Territory. The arrests of the Defendants and the proceedings in this Court were equally well publicized. Based entirely on the evidence adduced thus far, this Court concludes that the five Defendants have earned the right to be adjudicated in this community by a jury of their peers who will decide their guilt or innocence of the charge of First Degree Murder of Corporal Williams, a

human being and career police officer, by the means of kidnapping, torture and death.

This Court concludes that a clear and convincing showing has been made as to four (4) of the five (5) defendants; having considered the facts in evidence, arguments of counsel, and review of the documents submitted by the People for *In Camera* consideration and otherwise being fully advised, the People's request is granted in part and denied in part. A separate Order of even date win accompany this Memorandum Opinion.