132 Nev., Advance Opinion 65

IN THE SUPREME COURT OF THE STATE OF NEVADA

MATTHEW WASHINGTON,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 65998

**FILED**

AUG 1 2 2016



TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of conspiracy to commit murder, murder with the use of a deadly weapon, three counts of attempted murder with the use of a deadly weapon, two counts of battery with the use of a deadly weapon, ten counts of discharging a firearm at or into a structure, and possession of a firearm by a felon. Eighth Judicial District Court, Clark County; Kenneth C. Cory, Judge.

*Affirmed.*

Philip J. Kohn, Public Defender, and Sharon G. Dickinson, Deputy Public Defender, Clark County,
for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Ryan J. MacDonald, Deputy District Attorney, Clark County,
for Respondent.

SUPREME COURT
OF
NEVADA

(O) 1947A

16 -25013

BEFORE HARDESTY, SAITTA and PICKERING, JJ.

*OPINION*

By the Court, HARDESTY, J.:

A jury convicted appellant Matthew Washington of ten counts of discharging a firearm at or into a structure pursuant to NRS 202.285(1). In this appeal, we are asked to determine whether multiple convictions under this statute are permissible based on multiple discharges that occurred in quick succession. Because the word "discharges," as used in NRS 202.285(1), unambiguously allows for a separate conviction for each discrete shot, we conclude that Washington's ten convictions for discharging a firearm are not redundant.

Washington also challenges the sufficiency of the evidence to convict him of first-degree murder, attempted murder, conspiracy to commit murder, and discharging a firearm into an occupied structure. Having carefully reviewed the evidence in the record before us, we conclude that the State presented sufficient evidence to convict Washington of these charges.[1] Finally, we consider Washington's challenge to the criminal information. Because the State is not required to prove the identity of unknown conspiracy members, we conclude that the State's use of the language "unnamed coconspirator" in the second amended criminal information did not render the document defective. As

---

[1]Because Washington does not contest the sufficiency of the evidence with regard to his convictions for battery with use of a deadly weapon and possession of a firearm by a felon, we affirm these convictions as well.

 

a result, Washington has failed to demonstrate substantial prejudice, and reversal is therefore not warranted on this basis.

## FACTS AND PROCEDURAL HISTORY

In the early morning hours on November 5, 2013, Marque Hill, LaRoy Thomas, Nathan Rawls, and Ashely Scott were asleep in an apartment in Las Vegas when they were awakened by gunshots being fired into the apartment in rapid succession. Scott was shot in the foot, Thomas was shot in the ankle, and Rawls was killed. Darren and Lorraine DeSoto, who resided in a neighboring apartment, were also awakened by the sound of the gunshots. The DeSotos observed a silver Dodge Magnum drive slowly past their window and called 911.

An officer with the Las Vegas Metropolitan Police Department (LVMPD) was on patrol when he received notification of the shooting. Within minutes, the officer observed a vehicle matching the description given by the DeSotos. The officer pulled the vehicle over and conducted a felony vehicle stop. Washington was the driver, and Martell Moten was a passenger in the rear driver-side seat. Washington told the officer that "he was by the Stratosphere and he just picked up his friend and they were going home." An officer testified that the Stratosphere is "fairly close" to the apartment where the shooting occurred.

The DeSotos were brought to the scene and identified the silver Dodge Magnum as the one they observed drive slowly past their window. Washington and Moten were then taken into custody. Because the vehicle doors had been left open, an officer observed a handgun underneath the front passenger seat. The gun was later determined to be a Smith & Wesson 9 millimeter. The vehicle was towed to a crime lab, and a search warrant was obtained. After the vehicle was processed by the crime lab but while it was still in the possession of the crime lab, a

detective learned that another handgun was still in the vehicle. The detective searched for and found a handgun concealed in the vehicle's steering column. This gun was later determined to be a .40 caliber Glock.

An LVMPD crime scene analyst testified that seven .40 caliber and six 9 millimeter cartridge casings were found outside the apartment. The seven .40 caliber cartridge casings were determined to have been fired from the Glock found in the steering column of Washington's vehicle, and the six 9 millimeter cartridge casings were determined to have been fired from the Smith & Wesson found under the front passenger seat of the vehicle.

Washington was charged with conspiracy to commit murder, murder with the use of a deadly weapon, three counts of attempted murder with the use of a deadly weapon, two counts of battery with the use of a deadly weapon, ten counts of discharging a firearm at or into a structure, and possession of a firearm by a felon. A jury found Washington guilty of all counts, and Washington now appeals.

## DISCUSSION

On appeal, Washington argues: (1) double jeopardy precludes multiple convictions for discharging a firearm; (2) there was insufficient evidence to support his convictions for first-degree murder, attempted murder, conspiracy to commit murder, and discharging a firearm into an occupied structure; and (3) the criminal information was defective because the identity of an unnamed coconspirator needed to be proven.[2]

---

[2]Washington also challenges his conviction on several other grounds: (1) a jury instruction improperly informed the jury that the charges against him were felonies, (2) the district court erred in rejecting his proffered jury instruction on motive, (3) the State committed prosecutorial
*continued on next page . . .*

OF NEVADA


(O) 1947A

4

*Washington's convictions for discharging a firearm at or into a structure*

Washington argues that double jeopardy prevents the State from charging one count for each discharge of a firearm because firing a gun multiple times in quick succession amounts to a single violation of NRS 202.285(1). Washington argues that the unit of prosecution is the "firearm." Based on the substance of Washington's argument, which involves a question about the "unit of prosecution," we conclude that Washington's argument actually raises an issue of redundancy, not double jeopardy. *See Jackson v. State*, 128 Nev. 598, 612, 291 P.3d 1274, 1283 (2012) ("Nevada's redundancy case law has . . . captured 'unit of prosecution' . . . within its sweep."); *Firestone v. State*, 120 Nev. 13, 16, 83 P.3d 279, 281 (2004) (disagreeing with the defendant's classification of the issue raised on appeal as a double jeopardy concern when the defendant's argument stemmed from his conviction "of three counts of leaving the

---

. . . *continued*

misconduct during its closing argument by stating that the jury could find that Washington acted with specific intent if it found that he discharged a firearm, (4) the State was required to obtain a new search warrant before conducting a second search of his vehicle, (5) the State's forensic scientist improperly testified that she and three of her colleagues had come to the same conclusion regarding bullets and shell casings found at the scene, (6) the district court erred in allowing evidence of field interview stops to be admitted during the penalty phase without sua sponte conducting an evidentiary hearing to determine whether the stops were constitutional, and (7) he was prejudiced when the State introduced evidence of his tattoos during the penalty hearing.

We decline to consider arguments (1), (5), and (6) because Washington failed to object or preserve these arguments below. *Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003). And after careful consideration, we conclude that the remaining arguments lack merit.

 

scene of the accident"). Thus, we analyze Washington's argument in the context of redundancy.

"[A] claim that convictions are redundant stems from the legislation itself and the conclusion that it was not the legislative intent to separately punish multiple acts that occur close in time and make up one course of criminal conduct." *Wilson v. State*, 121 Nev. 345, 355, 114 P.3d 285, 292 (2005). Determining the unit of prosecution under a criminal statute thus involves a matter of statutory interpretation. *Jackson*, 128 Nev. at 612, 291 P.3d at 1278. "Statutory interpretation is a question of law subject to de novo review." *State v. Catanio*, 120 Nev. 1030, 1033, 102 P.3d 588, 590 (2004). "We must attribute the plain meaning to a statute that is not ambiguous." *Id.* "An ambiguity arises where the statutory language lends itself to two or more reasonable interpretations." *Id.*

The legislation at issue here is NRS 202.285(1), which provides that "[a] person who willfully and maliciously discharges a firearm at or into any house, room, [or] apartment" is guilty of either a misdemeanor or felony depending on whether the structure is abandoned or occupied. The unit of prosecution in NRS 202.285 does not turn on the word "firearm" but instead on the meaning of the verb "discharges." *See State v. Rasabout*, 356 P.3d 1258, 1263 (Utah 2015) (determining that the unit of prosecution for Utah's statute that prohibits the "*discharge* [of] any kind of dangerous weapon or firearm" is the term "discharge"). NRS Chapter 202 does not define the term discharge. However, the commonly understood meaning, in the context of a firearm, is the act of the bullet leaving the weapon. *See Discharge, Merriam-Webster's Collegiate Dictionary* (11th ed. 2011) (defining "discharge" as "go off, fire").

Our conclusion that the unit of prosecution is the act of the bullet leaving the weapon is supported by a similar statute, NRS 476.070(1), and by the statutory definition of a "firearm." NRS 476.070(1) provides that "[a]ny person who discharges any bullet, projectile or ammunition of any kind which is tracer or incendiary in nature on any grass, brush, forest or crop-covered land is guilty of a misdemeanor." Similarly, NRS 202.253(2) defines "'[f]irearm'" as "any device designed to be used as a weapon from which a projectile may be expelled through the barrel by the force of any explosion or other form of combustion." The use of single nouns—"bullet," "projectile," and "ammunition" in NRS 476.070(1) and "a projectile" in NRS 202.253(2)—demonstrates the fact that "discharges," as used in NRS 202.285(1), "contemplates a discrete shot or explosion." *Rasabout*, 356 P.3d at 1263-64 (examining Utah's statutory definition of a firearm and a handgun, which are defined, respectively, as "any device . . . from which is expelled *a* projectile by action of *an* explosive" and "a firearm of any description . . . from which any shot, bullet, or other missile can be discharged" (alterations in original) (internal quotation marks omitted)).

Therefore, we conclude that "discharges," as used in NRS 202.285(1), is not ambiguous, *see Catanio*, 120 Nev. at 1033, 102 P.3d at 590, and that it is the Legislature's intent to separately punish each time a bullet leaves the gun under NRS 202.285(1), *see Wilson*, 121 Nev. at 355, 114 P.3d at 292.[3] Accordingly, we further conclude that Washington's ten convictions for discharging a firearm are not redundant.

[3]We are not asked in this case to determine the unit of prosecution under NRS 202.285(1) where a fully automatic firearm is used. *See generally State v. Rasabout*, 356 P.3d 1258, 1264 n.25 (Utah 2015)
*continued on next page . . .*

*Sufficiency of the evidence*

When reviewing a challenge to the sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Rose v. State*, 123 Nev. 194, 202, 163 P.3d 408, 414 (2007) (internal quotation marks omitted). "Where . . . there is substantial evidence to support the jury's verdict, it will not be disturbed on appeal." *Bolden v. State*, 97 Nev. 71, 73, 624 P.2d 20, 20 (1981).

The jury is tasked with "assess[ing] the weight of the evidence and determin[ing] the credibility of witnesses." *Rose*, 123 Nev. at 202-03, 163 P.3d at 414 (internal quotation marks omitted). And a jury is free to rely on both direct and circumstantial evidence in returning its verdict. *Wilkins v. State*, 96 Nev. 367, 374, 609 P.2d 309, 313 (1980). This court has consistently held that "circumstantial evidence may constitute the sole basis for a conviction." *Canape v. State*, 109 Nev. 864, 869, 859 P.2d 1023, 1026 (1993).

*First-degree murder*

"Murder is the unlawful killing of a human being . . . [w]ith malice aforethought, either express or implied." NRS 200.010(1); *see also Collman v. State*, 116 Nev. 687, 719-20, 7 P.3d 426, 447 (2000) ("[T]o

---

. . . *continued*

(describing "fully automatic weapon" based on definition in Utah statute as a firearm that is designed or modified to shoot automatically more than one shot, without manually reloading, by a single function of the trigger and suggesting that for purpose of unlawful-discharge-of-a-firearm statute, it does not matter how many times the trigger is pulled but instead how many "explosion[s]" there are).

establish that a killing is [first-degree] murder . . . , the State must prove that the killer acted with malice aforethought, i.e., with the deliberate intention unlawfully to take life or with an abandoned and malignant heart."). Express malice is defined as the "deliberate intention unlawfully to take away the life of a fellow creature, which is manifested by external circumstances capable of proof." NRS 200.020(1). Whereas "[m]alice shall be implied when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart." NRS 200.020(2). "Malice may be inferred from an act done in willful disregard of the rights of another, or an act wrongfully done without just cause or excuse, or an act or omission of duty betraying a willful disregard of social duty." NRS 193.0175. "Malice aforethought may be inferred from the intentional use of a deadly weapon in a deadly and dangerous manner." *Moser v. State*, 91 Nev. 809, 812, 544 P.2d 424, 426 (1975).

Based on how Washington was charged, the jury was also required to find that he committed a "willful, deliberate and premeditated killing." NRS 200.030(1)(a). "[W]illful first-degree murder requires that the killer actually intend to kill." *Byford v. State*, 116 Nev. 215, 234, 994 P.2d 700, 713 (2000). "Deliberation requires a thought process and a weighing of the consequences[, and p]remeditation is a design, a determination to kill, distinctly formed in the mind by the time of the killing." *Valdez v. State*, 124 Nev. 1172, 1196, 196 P.3d 465, 481 (2008) (internal quotation marks and footnotes omitted). "Evidence of premeditation and deliberation is seldom direct." *Briano v. State*, 94 Nev. 422, 425, 581 P.2d 5, 7 (1978). Intent "is manifested by the circumstances connected with the perpetration of the offense." NRS 193.200; *see also Valdez*, 124 Nev. at 1197, 196 P.3d at 481 ("[I]ntent can rarely be proven

by direct evidence of a defendant's state of mind, but instead is inferred by the jury from the individualized, external circumstances of the crime." (internal quotation marks omitted)). "[T]he intention to kill may be ascertained or deduced from the facts and circumstances of the killing, such as the use of a weapon calculated to produce death, the manner of the use, and the attendant circumstances characterizing the act." *Moser*, 91 Nev. at 812, 544 P.2d at 426.

Based on the theory pursued by the State in this case, it could not rely on implied malice and, instead, had to prove that Washington actually intended to kill someone. Washington argues that the State failed to prove he acted willfully, deliberately, with malice, or with premeditation because he had no plan to kill or harm the victims, he did not know the victims, and he did not know there were people inside the apartment.[4] We disagree.

Intent to kill can be inferred from the circumstances surrounding the killing. Due to the nature of the structure, a residential building in a populated area of town, and the time of day, 4:35 a.m., the jury could infer that Washington knew or reasonably should have known that the apartment was occupied. We conclude that firing multiple bullets into an occupied structure demonstrates intent to kill such that any rational juror could reasonably infer that Washington acted with express malice and that his actions were willful. With regard to deliberation and

---

[4]Thomas and Hill both testified that during their time at the apartment, they did not fight with anyone and did not observe the others in the apartment having problems with anyone. Additionally, Thomas, Scott, and Hill all testified that they did not know Washington.

premeditation, the State presented circumstantial evidence at trial showing that Washington drove to the apartment complex with a handgun in the vehicle and that the handgun was discharged numerous times into the inhabited apartment without provocation. Based on this evidence, we conclude that the jury could reasonably infer that Washington's actions were deliberate and premeditated. Accordingly, we conclude that the State sufficiently proved the elements of first-degree murder such that any rational juror could have found Washington guilty beyond a reasonable doubt. *See Rose*, 123 Nev. at 202, 163 P.3d at 414.

*Attempted murder*

In order to prove attempted murder, the State is required to prove "the performance of an act or acts which tend, but fail, to kill a human being, when such acts are done with express malice, namely, with the deliberate intention unlawfully to kill." *Keys v. State*, 104 Nev. 736, 740, 766 P.2d 270, 273 (1988) ("An attempt, by nature, is a failure to accomplish what one *intended* to do."). Based on our previous conclusion that the jury could infer that Washington acted with express malice and the fact that Washington fired multiple bullets that failed to kill Hill, Thomas, and Scott, we conclude that the State sufficiently proved the elements of attempted murder such that any rational juror could have found Washington guilty beyond a reasonable doubt. *See Rose*, 123 Nev. at 202, 163 P.3d at 414.

*Conspiracy to commit murder*

"A conspiracy is an agreement between two or more persons for an unlawful purpose." *Doyle v. State*, 112 Nev. 879, 894, 921 P.2d 901, 911 (1996), *overruled on other grounds by Kaczmarek v. State*, 120 Nev. 314, 333, 91 P.3d 16, 29 (2004). "A person who knowingly does any act to

SUPREME COURT
OF
NEVADA

(O) 1947A

11

further the object of a conspiracy, or otherwise participates therein, is criminally liable as a conspirator . . . ." *Id.* Even though "mere association is insufficient to support a charge of conspiracy," *Sanders v. State*, 110 Nev. 434, 436, 874 P.2d 1239, 1240 (1994), "proof of even a single overt act may be sufficient to corroborate a defendant's statement and support a conspiracy conviction," *Doyle*, 112 Nev. at 894, 921 P.2d at 911. "[C]onspiracy is usually established by inference from the conduct of the parties." *Rowland v. State*, 118 Nev. 31, 46, 39 P.3d 114, 123 (2002).

Shortly after the shooting, the police conducted a vehicle stop. Washington was the driver of the vehicle, and Moten was a passenger. The witnesses who saw the vehicle, a silver Dodge Magnum, leaving the scene of the shooting were brought to the vehicle stop and identified the vehicle as the silver Dodge Magnum they observed leaving the area of the shooting. The shell casings found at the crime scene matched the two handguns found in the vehicle. Based on this evidence, we conclude that the State sufficiently proved the existence of a conspiracy.

Because "conspiracy is a specific intent crime," the State was also required to prove that Washington had "the intent to agree or conspire and the intent to commit the offense that is [the] object of the conspiracy." 15A C.J.S. *Conspiracy* § 126 (2012). Accordingly, the State was required to prove that Washington had the intent to kill. Based on our previous conclusion that the jury could infer that Washington acted with intent to kill and the fact that the parties' intent to conspire is demonstrated by the existence of a conspiracy, we conclude that the State sufficiently proved the elements of conspiracy to commit murder such that any rational juror could have found Washington guilty beyond a reasonable doubt. *See Rose*, 123 Nev. at 202, 163 P.3d at 414.

*Discharging a firearm*

"A person who willfully and maliciously discharges a firearm at or into any [structure] . . . is guilty of a category B felony" if the structure is occupied or a misdemeanor if the structure is abandoned. NRS 202.285(1)(a), (b). Because NRS 202.285(1)'s penalties are based on whether the structure is occupied, Washington argues that the State was required to prove that he knew or had reason to know that the apartment was inhabited. Even assuming that is what the State had to prove, the circumstantial evidence is sufficient to prove that Washington knew or should have known that the structure was occupied. The evidence at trial established that two firearms were willfully and maliciously discharged into the apartment. Moreover, there was sufficient evidence presented to show that the apartment was not abandoned. Thomas testified that the television was left on, and the apartment was located in a populated complex. This evidence shows that Washington should have known that the apartment may have been occupied. Further, an LVMPD forensic analyst testified that seven shell casings found outside the apartment and seven bullet fragments found inside the apartment matched the Glock handgun found in the steering column of the vehicle, and six shell casings found outside the apartment matched the Smith & Wesson found under the front passenger seat of the vehicle. Based on the evidence adduced at trial, we conclude that the State sufficiently proved the elements of discharging a firearm into a structure such that any rational juror could have found Washington guilty beyond a reasonable doubt. *See Rose*, 123 Nev. at 202, 163 P.3d at 414.

*The criminal information*

Washington argues that reversal is required because the criminal information was defective in referring to an unnamed coconspirator whose existence the State never proved. Because the sufficiency of the indictment was challenged only after all the evidence was presented at trial, we apply a reduced standard such that Washington must demonstrate that his substantial rights were affected. *See State v. Jones*, 96 Nev. 71, 74, 605 P.2d 202, 204 (1980).

In count 1 of the second amended criminal information, the State alleged as follows: "Defendant MATTHEW WASHINGTON and MARTELL MOTEN along with an *unnamed coconspirator*, did then and there meet with each other and between themselves and each of them with the other, willfully, unlawfully and feloniously conspire and agree to commit a crime." (Emphasis added.) The State alleged the same alternate theories of liability in each of counts 2 through 7 of the second amended information: "(1) by directly committing said act, and/or (2) by Defendant MATTHEW WASHINGTON and MARTELL MOTEN and/or *unnamed coconspirator*, aiding or abetting each other . . . and/or (3) Defendant MATTHEW WASHINGTON and MARTELL MOTEN and an *unnamed coconspirator*, conspiring with each . . . ."[5] (Emphases added.) Similarly, the theories of liability for counts 8 through 17, discharging a firearm, alleged as follows: "(1) by directly committing said act, and/or (2) by Defendant MATTHEW WASHINGTON and MARTELL MOTEN and/or

---

[5]Counts 2 through 7 include 1 count of murder with use of a deadly weapon, 3 counts of attempted murder with use of a deadly weapon, and 2 counts of battery with use of a deadly weapon.

 

*unnamed coconspirator*, aiding or abetting each other . . . , and/or (3) pursuant to a conspiracy to commit this crime." (Emphasis added.)

The United States Supreme Court has stated that "at least two persons are required to constitute a conspiracy, but the identity of the other members of the conspiracy is not needed, inasmuch as one person can be convicted of conspiring with persons whose names are unknown." *Rogers v. United States*, 340 U.S. 367, 375 (1951). Because *Rogers* does not require the identity of unknown conspiracy members to be proven, we conclude that Washington's second amended criminal information was not defective. As a result, Washington has failed to demonstrate substantial prejudice and reversal is not warranted on this basis.

Accordingly, for the reasons set forth above, we affirm the judgment of conviction.[6]

_____, J.
Hardesty

We concur:

_____, J.
Saitta

_____, J.
Pickering

---

[6]Washington also argues that cumulative error entitles him to a new trial. However, because Washington has failed to demonstrate any error, we conclude that he was not deprived of a fair trial due to cumulative error.