# IN THE SUPREME COURT OF THE STATE OF NEVADA

JAMES RAY EARL WALKER,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 75013

FILED

JUN 1 9 2020

ELIZABETH A BROWN
CLERK OF SUPREME COURT

BY
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a district court order denying appellant James Walker's postconviction petition for a writ of habeas corpus. Eighth Judicial District Court, Clark County; Valerie Adair, Judge.

Walker stabbed Christine Anziano to death as she exited a Las Vegas drug store and stole her purse and purchases. The next night, Walker slashed the throat of Kirk Cole and absconded with Cole's money. Cole survived his injuries. Walker's girlfriend, Myrdus Archie, assisted him in the incidents involving Anziano and Cole. Acting alone, Walker also stole Susan Simon's purse while she was sitting in her car in a store parking lot. A jury convicted Walker of conspiracy to commit robbery, burglary, two counts of robbery with the use of a deadly weapon, attempted murder with the use of a deadly weapon, and murder with the use of a deadly weapon. The jury sentenced Walker to death for Anziano's murder. Walker unsuccessfully challenged the convictions and sentence on appeal, *see Walker v. State (Walker I)*, Docket No. 49507 (Order of Affirmance, March 3, 2010), *reh'g denied* Docket No. 49507 (Order Denying Rehearing but Clarifying Decision, May 17, 2010), and in a postconviction petition for a writ of habeas corpus, *see Walker v. State (Walker II)*, Docket No. 62838

20-22873

(Order of Affirmance, November 25, 2014). Walker then filed a second postconviction petition for a writ of habeas corpus, which the district court denied. This appeal followed. Walker argues that the district court erred by denying his petition as procedurally barred. We affirm.[1]

Walker filed his petition over five years after the remittitur issued on his direct appeal. The petition therefore was untimely under NRS 34.726(1). The petition was also successive because he had previously filed a postconviction petition and constituted an abuse of the writ because he raised new claims that could have been litigated in prior proceedings. NRS 34.810(1)(b)(2), (2). To overcome those procedural bars, Walker had to demonstrate good cause and actual prejudice. NRS 34.726(1); NRS 34.810(1)(b)(2), (3). And because the petition was filed over five years after the remittitur issued on direct appeal, NRS 34.800(2) imposes a rebuttable presumption of prejudice to the State. To overcome that presumption, Walker had to show that (1) "the petition is based upon grounds of which [he] could not have had knowledge by the exercise of reasonable diligence," NRS 34.800(1)(a), or (2) the failure to consider his claims would result in a fundamental miscarriage of justice, NRS 34.800(1)(b). In addition, some of the claims raised in the petition have been addressed in prior appellate proceedings and therefore further consideration of them is barred by the

---

[1]We have considered Walker's argument that the district court erred by adopting the findings of fact and conclusions of law drafted by the State and conclude that a remand is not necessary under the circumstances presented, which are distinguishable from those presented in *Byford v. State*, 123 Nev. 67, 156 P.3d 691 (2007).

doctrine of the law of the case. *Hall v. State*, 91 Nev. 314, 315-16, 535 P.2d 797, 798-99 (1975).[2]

*Failure to disclose exculpatory evidence*

Walker argues that the State's failure to turn over evidence related to a witness to the Anziano attack in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), provided good cause for the delay in filing the petition. *Brady* obliges a prosecutor to disclose evidence favorable to the defense when that evidence is material to guilt, punishment, or impeachment. *Mazzan v. Warden*, 116 Nev. 48, 66-67, 993 P.2d 25, 36-37 (2000). There are three components to a successful *Brady* claim: "the evidence at issue is favorable to the accused; the evidence was withheld by the state, either intentionally or inadvertently; and prejudice ensued, i.e., the evidence was material." *Id.* at 67, 993 P.2d at 37. The last two components parallel the cause and prejudice showings required to excuse the procedural bars to an untimely or successive petition. *State v. Huebler*, 128 Nev. 192, 198, 275 P.3d 91, 95 (2012) ("[E]stablishing that the State withheld the evidence demonstrates that the delay was caused by an impediment external to the defense."); *see also Banks v. Dretke*, 540 U.S. 668, 691 (2004) ("'[C]ause and prejudice' in this case 'parallel two of the three components of the alleged *Brady* violation itself.'" (quoting *Strickler v. Greene*, 527 U.S. 263, 282 (1999))). To overcome the presumption of prejudice when the State has pleaded laches, a petitioner must demonstrate that he could not have

---

[2]Under the law-of-the-case doctrine, this "court may revisit a prior ruling when (1) subsequent proceedings produce substantially new or different evidence, (2) there has been an intervening change in controlling law, or (3) the prior decision was clearly erroneous and would result in manifest injustice if enforced." *Hsu v. County of Clark*, 123 Nev. 625, 630, 173 P.3d 724, 728-29 (2007) (quotation marks omitted).

discovered the *Brady* evidence "by the exercise of reasonable diligence," NRS 34.800(1)(a), and that the evidence demonstrates a fundamental miscarriage of justice occurred, NRS 34.800(1)(b). *Cf. Rippo v. State*, 113 Nev. 1239, 1257, 946 P.2d 1017, 1028 (1997) ("[A] *Brady* violation does not result if the defendant, exercising reasonable diligence, could have obtained the information."). In considering whether a petitioner has exercised due diligence for purposes of NRS 34.800, the petitioner should not be penalized for failing to diligently uncover evidence that was in the sole possession of the State. *Strickler*, 527 U.S. at 287-88.

We conclude that the *Brady* claim lacks merit and therefore does not overcome the procedural bars. The State was not in sole possession of evidence about the witness's contacts with State investigators, her observations, and her possible familiarity with the defendants; rather, the witness's identity had been known since the preliminary hearing and she could have been interviewed at any time since. Additionally, nothing in her statement indicates that she ever relayed the more detailed account of her observations about the night of the murder and that she may have seen the defendants in the neighborhood on another occasion. Lastly, Walker did not demonstrate that any of the evidence was material. Even if he could cast doubt on the witness's identification, he failed to demonstrate that this information gave rise to a reasonable doubt or that there was a reasonable probability he would not have been convicted. In addition to this witness, another individual identified Walker as he ran from the scene and the jury viewed video of the attack on Anziano. Anziano's property was also found in the home Walker shared with Archie. Because Walker failed to establish the necessary elements of a *Brady* violation, the district court did not err in

concluding that this claim was insufficient to overcome the procedural bars.[3]

*Limitations on first postconviction counsel*

Walker next argues that the financial limits the district court placed on litigation of his first postconviction petition constitute good cause for filing a second, untimely petition because they prevented him from discovering the legal and factual bases for the claims raised in the second petition. We disagree. Arguments related to the district court's actions during the litigation of the first postconviction petition should have been raised in the related appeal. Thus, Walker's good-cause allegations constitute an abuse of the writ and are themselves procedurally barred. *See* NRS 34.810(1)(b)(2), (2); *Hathaway v. State*, 119 Nev. 248, 252-53, 71 P.3d 503, 506 (2003). To the extent Walker relies on issues decided in the prior appeal, those arguments are successive, and are similarly procedurally barred. *See* NRS 34.810(2).

*Ineffective assistance of postconviction counsel*

Because Walker's first postconviction counsel was appointed pursuant to a statutory mandate, NRS 34.820(1), he was entitled to the effective assistance of that counsel. *Crump v. Warden*, 113 Nev. 293, 304-05, 934 P.2d 247, 254 (1997). As Walker filed his petition within one year after this court issued remittitur from its decision affirming the denial of his first postconviction petition, his claims of ineffective assistance of

---

[3]Walker also argues that postconviction counsel should have asserted that trial counsel was ineffective for failing to discover evidence related to this witness. As this evidence could not have reasonably affected the outcome of his trial, he failed to demonstrate that he was prejudiced or that the failure to consider this claim would result in a fundamental miscarriage of justice.

postconviction counsel were raised within a reasonable time after they became available. *See* NRS 34.726(1); *Rippo v. State*, 134 Nev. 411, 419-22, 423 P.3d 1084, 1095-97 (2018); *State v. Eighth Judicial Dist. Court (Riker)*, 121 Nev. 225, 235, 112 P.3d 1070, 1077 (2005). A *meritorious* claim of ineffective assistance of postconviction counsel may establish the prejudice prong of the good-cause showing required under NRS 34.726(1), *Rippo*, 134 Nev. at 422, 423 P.3d at 1097, and the good cause and prejudice showings required under NRS 34.810(1)(b), *id.* at 425, 423 P.3d at 1099; *Crump*, 113 Nev. 304-05, 934 P.2d at 253-54.

To establish that his postconviction-counsel claims had merit, Walker had to demonstrate that postconviction counsel's performance was deficient and that but for counsel's deficient performance, he would have been granted relief. *See Rippo*, 134 Nev. at 423-25, 423 P.3d at 1098-99 (adopting *Strickland* analysis to determine whether postconviction counsel provided ineffective assistance).[4] And to the extent that Walker's postconviction-counsel claims are based on the omission of trial- or appellate-counsel claims, Walker had to prove the ineffectiveness of both attorneys. *Id.* at 424, 423 P.3d at 1098. An evidentiary hearing was warranted only if Walker's claims were "supported by factual allegations

---

[4]Walker argues that the failure to consider the underlying claims would also result in a fundamental miscarriage of justice. For reasons discussed below, Walker failed to demonstrate that the underlying claims had merit or that he was prejudiced by the alleged errors. Accordingly, Walker failed to demonstrate that the errors resulted in a fundamental miscarriage of justice. *See Pellegrini v. State*, 117 Nev. 860, 887, 34 P.3d 519, 537 (2001) (providing that a fundamental miscarriage of justice requires petitioner to show "that it is more likely than not that no reasonable juror would have convicted him absent a constitutional violation").

not belied by the record that, if true, would entitle him to relief." *Berry v. State*, 131 Nev. 957, 967, 363 P.3d 1148, 1154 (2015). For the reasons discussed below, we conclude that Walker has not demonstrated that postconviction counsel provided ineffective assistance.

*Judicial bias*

Walker argues that postconviction counsel should have asserted that the district court was biased against him during the litigation of the first postconviction petition based on its refusal to provide sufficient funding for investigation and its statements that the proposed investigation would be futile. We conclude that Walker cannot demonstrate deficient performance because the judicial bias claim lacks merit. During the litigation of the instant petition, Walker moved to disqualify the district court judge citing bias she expressed during the prior postconviction litigation. Chief Judge Barker denied the motion, and Walker challenged the decision in a mandamus petition filed with this court. In denying the petition, this court concluded that Walker failed to demonstrate that Chief Judge Barker manifestly abused his discretion in denying the motion to disqualify as he reviewed Judge Adair's comments from the transcripts related to the first postconviction litigation and concluded that she did not display deep-seated favoritism of, or antagonism toward, either side. *Walker v. Eighth Judicial Dist. Court*, Docket No. 70766, Order Denying Petition at 3 (September 16, 2016). Based on these rulings, Walker failed to demonstrate that postconviction counsel omitted a meritorious judicial bias claim. Therefore, the district court did not err in denying this claim without an evidentiary hearing.

*Severance*

Walker argues that postconviction counsel should have challenged the district court's decision not to sever the codefendants or the charges. We conclude that this argument lacks merit.

Trial counsel moved to sever both the codefendants and the charges. The district court denied the motions and this court affirmed. *Walker I*, Docket No. 49507, Order of Affirmance at 3-5. As trial and appellate counsel were unsuccessful in challenging the joinder of defendants and charges, Walker has not demonstrated that postconviction counsel acted unreasonably in omitting a successive claim that was also barred by the law-of-the-case doctrine. Walker did not allege what postconviction counsel could have argued to avoid these bars nor has he demonstrated that the law of the case should not be applied. To the extent that Walker asserts that postconviction counsel should have challenged trial and appellate counsels' performance in litigating the severance motions, he has not demonstrated that postconviction counsel acted unreasonably in omitting claims for which he could not demonstrate prejudice.

*Batson objection*

Walker argues that postconviction counsel should have argued that trial counsel did not adequately litigate an objection based on *Batson v. Kentucky*, 476 U.S. 79 (1986).[5] Walker failed to allege sufficient facts to

---

[5]Walker also argues that postconviction counsel should have relitigated the *Batson* claim that was rejected on direct appeal, as opposed to challenging trial and appellate counsels' effectiveness. Our decision rejecting that *Batson* claim, *Walker I*, Docket No. 49507, Order of Affirmance at 2-3, constitutes the law of the case. Walker's assertion that

SUPREME COURT
OF
NEVADA

(O) 1947A

demonstrate deficient performance by postconviction counsel. The underlying *Batson* claim is partially based on a page from the district attorney's manual from seven years before Walker's trial, and nothing in the record of the jury selection proceedings suggests that the office still followed that manual's litigation strategies at the time of Walker's trial. Additionally, the manual page did not advise prosecutors to use peremptory challenges to remove veniremembers based on any impermissible criteria or to misrepresent the reasons for a peremptory challenge. As to Walker's contention that prior counsel should have provided a comparative juror analysis, Walker fails to demonstrate prejudice. This court concluded on direct appeal that asking the veniremember if he might face any ridicule were he to impose a death sentence "was not grounded in racial discrimination." *Walker I*, Docket No. 49507, Order of Affirmance at 2-3. This is the only way in which Walker alleges the prosecutor's questioning of the challenged veniremember differed from the questioning of other veniremembers. And the reasons proffered for the peremptory challenge were based on an inquiry that was common to all the veniremembers and involved each one's personal experience with the criminal justice system and attitudes toward the death penalty. Therefore, there was no reasonable probability of a different outcome had counsel provided a comparative juror analysis, and the district court did not err in rejecting this postconviction-counsel claim without conducting an evidentiary hearing.

---

the prior decision was incorrect is not an "extraordinary circumstance[ ]" sufficient to warrant reconsideration, *see Hsu v. County of Clark*, 123 Nev. 625, 630, 173 P.3d 724, 728-29 (2007), and postconviction counsel was not ineffective for not relitigating that claim.

*Voir dire*

Walker argues that postconviction counsel should have claimed that the district court erred during voir dire. We disagree for two reasons. First, any trial error could have been, and indeed was, raised on direct appeal, NRS 34.810(1)(b)(2), (2); *see Walker I*, Docket No. 49507, Order of Affirmance at 2, so postconviction counsel could not be faulted for declining to raise it again absent circumstances that could provide good cause to overcome the procedural bars or avoid the law-of-the-case doctrine, which Walker has not established. Second, Walker failed to show that any impaneled jurors were not impartial as required to prevail on challenges to the district court's decision regarding for-cause challenges or sequestered voir dire. *See Wesley v. State*, 112 Nev. 503, 511, 916 P.2d 793, 799 (1996) ("If the impaneled jury is impartial, the defendant cannot prove prejudice."); *see also Leonard v. State (Leonard II)*, 117 Nev. 53, 64, 17 P.3d 397, 404 (2001) (recognizing that absent "a showing of prejudice to the defendant," a district court's decision to decline a request for individual voir dire will not be disturbed); *Ham v. State*, 7 S.W.3d 433, 439 (Mo. Ct. App. 1999) ("Even assuming it would have been better strategy to strike [a particular juror], we fail to see how [the defendant] could have been prejudiced because one qualified juror sat rather than another."). Although he asserts that three jurors were biased because they could not consider a sentence of life with the possibility of parole, the record shows otherwise. In particular, the jurors acknowledged that they could consider all forms of punishment and would consider aggravating and mitigating evidence. Therefore, Walker has not demonstrated that the district court erred in rejecting this postconviction-counsel claim without an evidentiary hearing.

Supreme Court
OF
Nevada

(0) 1947A

10

*Failure to challenge evidence*

Walker asserts that postconviction counsel did not adequately substantiate claims raised in the first petition that alleged trial counsel should have retained experts to challenge eyewitness identifications and DNA evidence. He also argues that postconviction counsel should have raised claims related to evidence seized during an apartment search and victim-impact evidence introduced during the guilt phase of trial.

First, Walker has not demonstrated that postconviction counsel omitted a meritorious trial-counsel claim. He asserts that trial counsel should have introduced expert testimony challenging the eyewitnesses' ability to make an accurate identification given the circumstances surrounding their observations—poor lighting, obstructions, alcohol consumption, stress, and cross-racial identification. The expert testimony Walker now proffers was largely inadmissible at trial. In particular, the fact that darkness, a disguise, stress, and a brief interaction may cast doubt on the certainty of an identification is a matter of common sense and therefore did not require specialized knowledge. *See United States v. Raymond*, 700 F. Supp. 2d 142, 150 (D. Me. 2010) (recognizing that expert witness testimony about matters of common sense "invites a toxic mixture of purported expertise and common sense"); *see also Townsend v. State*, 103 Nev. 113, 117, 734 P.2d 705, 708 (1987) (recognizing that expert testimony is admissible when "the expert's *specialized knowledge* will assist the trier of fact to understand the evidence or determine a fact in issue" (emphasis added)). Postconviction counsel thus had no sound basis to challenge trial counsel's performance in that respect. And although expert testimony about the reliability of cross-racial identifications may have been admissible, it was not unreasonable for trial counsel to forgo introducing

this testimony and instead argue that the eyewitnesses' different accounts were unreliable based on their differing descriptions and the conditions in which the witnesses observed the suspects. Walker further has not demonstrated prejudice based on trial counsel's failure to present this expert testimony or postconviction counsel's omission of the trial-counsel claim. He was identified by five witnesses either shortly after the crimes or at trial. Simon was the only witness to her purse snatching, but the crimes against Anziano and Cole were observed by two witnesses each. Moreover, physical evidence implicated Walker in the crimes. Anziano's purse and social security card, as well as Simon's keys, were discovered in Walker and Archie's home, and Cole's blood was found on Walker's shoes and Archie's car. Therefore, the district court did not err in rejecting this postconviction-counsel claim.

Second, Walker contends that postconviction counsel should have substantiated his claim that trial counsel was ineffective for not introducing DNA expert testimony.[6] We conclude that this argument lacks merit. The postconviction expert's analysis was premised on the notion that Walker's DNA connected him to the crimes such that the existence of a blood relative would alter the statistical analysis by the State's expert. However, Walker's DNA was not tied to any locations, victims, or instrumentalities of the crimes. Instead, the only DNA evidence offered in this case was that Cole's DNA was found on Walker's shoes. Thus, whether Walker has an additional blood-related relative would not have affected the expert's

_____

[6]Walker's claim only challenges conclusions as to the blood discovered on his shoes. He does not challenge the conclusions or random match statistics as they relate to the blood found on Archie's car.

conclusions as to Cole's DNA. Therefore, the district court did not err in denying this postconviction-counsel claim.

Lastly, Walker argues that postconviction counsel should have challenged the search of Archie's apartment, asserting the warrant application contained false information, and the victim-impact testimony admitted during the guilt phase of trial. We disagree. This court concluded on direct appeal that nothing in the record indicated any intentional or reckless falsehoods were included in the warrant application and that the introduction of victim-impact evidence did not prejudice Walker. *Walker I*, Docket No. 49507, Order of Affirmance, at 5-7. In light of these conclusions, Walker did not demonstrate that postconviction counsel acted unreasonably in omitting these arguments or that he was prejudiced by postconviction counsel's omission. *See* NRS 34.810(1)(b)(2), (2). Thus, the district court did not err in denying this postconviction-counsel claim.

*Unrecorded bench conferences*

Walker argues that postconviction counsel should have argued that trial counsel was ineffective for failing to ensure that all bench conferences were recorded. But postconviction counsel did raise that trial-counsel claim in the first petition. The district court rejected the claim and this court affirmed the decision, concluding that Walker did not identify "any issue that he was unable to argue due to the failure to record a portion of the proceeding." *Walker II*, Docket No. 62838, Order of Affirmance, at 4; *see Archanian v. State*, 122 Nev. 1019, 1033, 145 P.3d 1008, 1019 (2006). Walker still has not identified any issue that he was unable to argue due to the failure to record a bench conference and thus failed to show that trial counsel were ineffective in this regard. Because the trial-counsel claim

fails, the district court did not err in denying the postconviction-counsel claim.

*Voluntary intoxication*

Walker argues that postconviction counsel should have developed and introduced evidence supporting a defense of voluntary intoxication to substantiate his claim that trial counsel should have presented evidence to support a voluntary intoxication instruction. We conclude that this argument lacks merit. Walker did not allege that trial counsel failed to introduce credible, available evidence that Walker was intoxicated during the homicide. He also did not assert that he told trial counsel he had been drinking on the night of the homicide. Instead, he cites expert reports that are either inconclusive as to intoxication or based on evidence counsel could not have obtained before trial. Walker also has not demonstrated prejudice. The jury concluded that Walker committed both a premeditated homicide and a homicide during a felony—robbery. As robbery is a general intent crime, the voluntary intoxication instructions and supporting evidence would not have affected the jury's finding of first-degree felony murder. *See Daniels v. State*, 114 Nev. 261, 269, 956 P.2d 111, 116 (1998). Therefore, the district court did not err in denying this postconviction-counsel claim without conducting an evidentiary hearing.

*Prejudicial photographs and videos*

Walker argues that postconviction counsel should have challenged prejudicial photographs and videos which depicted injuries related to medical intervention, the attack on Anziano in slow motion, and repeated showings of Anziano's death. We conclude that this argument lacks merit. Postconviction counsel did not act unreasonably in omitting trial-error claims that were successive, constituted an abuse of the writ, or

were barred by the law-of-the-case doctrine. *See* NRS 34.810(1)(b)(2), (2); *Hall v. State*, 91 Nev. 314, 315-16, 535 P.2d 797, 798-99 (1975).

To the extent Walker couches the claims omitted by postconviction counsel as ineffective assistance of trial or appellate counsel, he has not demonstrated deficient performance or prejudice because postconviction counsel could not have demonstrated that trial or appellate counsel could have successfully challenged the district court's broad discretion to admit photographic and video evidence. *Byford v. State*, 116 Nev. 215, 231, 994 P.2d 700, 711 (2000); *Libby v. State*, 109 Nev. 905, 910, 859 P.2d 1050, 1054 (1993) (providing that even gruesome photographs may be admitted "as long as their probative value is not substantially outweighed by their prejudicial effect"), *vacated on other grounds*, 516 U.S. 1037 (1996). *But see Harris v. State*, 134 Nev. 877, 879-83, 432 P.3d 207, 210-13 (2018) (concluding that photographs of burned remains were more unfairly prejudicial than probative where court admitted numerous photographs and cause of death was not in dispute, but that admission was harmless considering overwhelming evidence of guilt). Although autopsy photographs have the potential to arouse the jurors' passions when they are gruesome and depict medical incisions, *see Clark v. Com.*, 833 S.W.2d 793, 794 (Ky. 1991) (noting that photographs become less admissible when the subject has been "materially altered by mutilation, autopsy, decomposition or other extraneous causes, not related to commission of the crime, so that the pictures tend to arouse passion and appall the viewer"), *superseded by rule as stated in Ragland v. Com.*, 476 S.W.3d 236 (Ky. 2015), trial and appellate counsel would not have been able to demonstrate that the district court abused its discretion in admitting them in this case because the evidence was relevant and not unfairly prejudicial. *See Hayes v. State*, 85

SUPREME COURT
OF
NEVADA

(O) 1947A

15

S.W.3d 809, 816 (Tex. Crim. App. 2002) ("[A]utopsy photographs are generally admissible unless they depict mutilation of the victim caused by the autopsy itself."). In particular, the photographs depicted the injuries Walker inflicted on Anziano and assisted the medical examiner in testifying about the cause of her death, and they were not so graphic as to "easily inflame the passions of a reasonable juror." *Harris*, 134 Nev. at 880, 432 P.3d at 211. Because there were no grounds on which trial or appellate counsel could successfully challenge the admission of the photographs, postconviction counsel was not deficient for omitting this trial- or appellate-counsel claim.

Walker has also not demonstrated that postconviction counsel performed deficiently in not challenging the introduction of videos of Anziano dying on the floor of the Sav-On store and the slow motion video of the attack. Appellate counsel challenged the video of Anziano on the Sav-On floor and this court concluded that it was relevant and that "[i]ts relevance was not substantially outweighed by the danger of unfair prejudice." *Walker I*, Docket No. 49507, Order of Affirmance, at 7. As to the slow-motion video, Walker's claim rests on a study published in 2016 that prior counsel could not have been faulted for not using at trial or in the prior postconviction proceeding, both of which were long over when the study was published. Walker also cannot show prejudice as there was considerable evidence of his intent based on testimony that he was waiting outside before attacking a customer on her way out and he was also convicted under a felony-murder theory, in which his intent flows from the robbery. Therefore, the district court did not err in denying these postconviction-counsel claims without conducting an evidentiary hearing.

SUPREME COURT
OF
NEVADA

(O) 1947A

*Guilt phase prosecutorial misconduct*

Walker argues that postconviction counsel should have claimed that trial counsel was ineffective for failing to address prosecutorial misconduct. To demonstrate that postconviction counsel was ineffective, Walker must show that trial and appellate counsel failed to challenge comments that "so infected the proceedings with unfairness as to make the results a denial of due process," *Hernandez v. State*, 118 Nev. 513, 525, 50 P.3d 1100, 1108 (2002), and that it is reasonably probable that, but for counsel's error, the result of the trial or appeal would have been different, *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

First, Walker argues that the prosecutor vouched for the police by insisting that officers "do their best," "do[ ] things beyond what a lot of you really know," performed "amazing police work in this case," and showed "initiative." The prosecutor also argued that an eyewitness didn't "look like a guy that would just come in and just make stuff up now or to the police at the time. . . He seems conscientious." We conclude that Walker failed to demonstrate that postconviction counsel omitted a meritorious trial-counsel claim regarding these comments. The prosecutor did not "place[ ] the prestige of the government behind the witness by providing personal assurances of the witness's veracity." *Browning v. State*, 120 Nev. 347, 359, 91 P.3d 39, 48 (2004) (internal quotation marks and alteration omitted). Instead, the comments asserted that the thoroughness of the police work rendered their findings more credible. The comment about the eyewitness responded to Walker's closing argument which insinuated that he was an overly zealous witness and thus his testimony was not accurate. *See Emil v. State*, 105 Nev. 858, 868, 784 P.2d 956, 962 (1989) (providing that comments invited by defense argument do not amount to prosecutorial

misconduct). As the comments were not objectionable, the district court did not err in denying the postconviction-counsel claim.

Second, Walker argues that the prosecutor disparaged him during closing argument by describing him as "cowardly," a "predator," and not one of "the smarter criminals." Walker also argues that the prosecutor improperly characterized a line of defense questioning as a "second victimization" of Anziano. Walker challenged these comments on direct appeal and in his first postconviction petition. In both instances, this court concluded that they did not warrant relief. *Walker I*, Docket No. 49507, Order of Affirmance, at 9; *Walker II*, Docket No. 62838, Order of Affirmance, at 7-9. Therefore, he did not demonstrate that postconviction counsel neglected to raise a meritorious claim of ineffective assistance of trial counsel.

Third, Walker argues that the prosecutor misstated the law with respect to premeditation by asserting that it "can be formed by instantaneous thoughts of the mind," describing premeditation with a "trigger" analogy, and referring to premeditation and deliberation as a single concept. We disagree. The complained-of arguments are largely consistent with the first-degree murder instructions provided in *Byford*, 116 Nev. at 236-37, 994 P.2d at 714-15. The jury was instructed that the arguments of counsel were not evidence and was properly instructed on the elements, including the definition of premeditation and deliberation. In some instances in which Walker asserts the prosecution conflated the concept of premeditation and deliberation, the prosecution merely described premeditated and deliberate murder as a concept in contrast to felony murder. Walker's argument implicitly acknowledges that he cannot demonstrate prejudice. He concedes that "[t]he facts presented by the

SUPREME COURT
OF
NEVADA

(O) 1947A

18

prosecution showed . . . a killing during a robbery gone wrong," which was sufficient to convict him of first-degree felony murder regardless of the comments related to the premeditation theory. For these reasons, postconviction counsel did not omit a meritorious trial-counsel claim. Accordingly, the district court did not err in denying the postconviction-counsel claim.

Fourth, Walker argues that the prosecutor improperly asked the jurors to place themselves in the position of the victims. The comment was improper, *see McGuire v. State*, 100 Nev. 153, 157, 677 P.2d 1060, 1064 (1984); therefore, trial counsel should have objected. However, considering the overwhelming evidence of Walker's guilt, he has not demonstrated a reasonable probability of a different outcome at trial had counsel objected or on appeal had appellate counsel raised this issue. *See Strickland*, 466 U.S. at 687-88; *King v. State*, 116 Nev. 349, 356, 998 P.2d 1172, 1176 (2000) (recognizing that prosecutorial misconduct may be harmless where there is overwhelming evidence of guilt). Walker therefore has not demonstrated that postconviction counsel neglected to raise a meritorious claim. Accordingly, the district court did not err in denying the postconviction-counsel claim.

Fifth, Walker argues that the prosecutor's argument about "responsibility and accountability under the law" was improper. We disagree. When considered in context, the prosecutor did not argue that the jury had a civic duty to convict Walker, *see, e.g., Haberstroh v. State*, 105 Nev. 739, 742, 782 P.2d 1343, 1345 (1989) (finding prosecutor committed misconduct by referring to the jury as "the conscience of the community"), but merely asked for justice and accountability, *see Lisle v. State*, 113 Nev. 540, 554, 937 P.2d 473, 482 (1997) (concluding that prosecutor's remarks

SUPREME COURT
OF
NEVADA

(O) 1947A

urging accountability do not amount to misconduct).  Because the comments were not objectionable, Walker has not demonstrated that postconviction counsel omitted a meritorious trial-counsel claim.  Therefore, the district court did not err in denying the postconviction-counsel claim.

*Guilt phase jury instructions*

Walker argues that postconviction counsel should have raised claims of ineffective assistance of trial counsel related to the guilt phase jury instructions.  He has not demonstrated deficient performance or prejudice as to either counsel.

First, Walker has not demonstrated deficient performance by postconviction counsel as to the instructions that were challenged on direct appeal because this court already concluded that the district court did not err in giving or refusing to give those instructions, *Walker I*, Docket No. 49507, Order of Affirmance at 8-9 (addressing challenges to robbery, felony murder, and equal-and-exact-justice instructions and to refusal to give voluntary intoxication instruction).[7]  To reiterate, postconviction counsel generally does not act unreasonably in omitting claims that have been rejected on the merits in a prior appellate proceeding absent circumstances that would overcome the law-of-the-case doctrine.  *Rippo v. State*, 134 Nev. 411, 429, 423 P.3d 1084, 1102 (2018).

Second, Walker argues that postconviction counsel should have challenged the district court's failure to provide a limiting instruction that

---

[7]In addition to the explanation provided in *Walker I*, the evidence does not support an afterthought robbery instruction because Anziano did not die from her injuries until after Walker absconded with her belongings. *See Nay v. State*, 123 Nev. 326, 333, 167 P.3d 430, 435 (2007) ("Robbery does not support felony murder where the evidence shows that the accused kills a person and only later forms the intent to rob that person.").

each juror was responsible to decide whether the evidence pertained to Walker, Archie, or both defendants. Walker failed to demonstrate deficient performance or prejudice. He cites no binding authority that requires the aforementioned instruction. The case he cites, *Zafiro v. United States*, 506 U.S. 534, 539 (1993), recognizes the risk of prejudice to codefendants in joint trials, but it does not require the jury to account for how it considered each piece of evidence. Walker also did not identify evidence that solely implicated Archie, which the jury could have unfairly considered against him. Therefore, the district court did not err in denying this postconviction-counsel claim.

Third, Walker argues that postconviction counsel should have claimed trial counsel was ineffective for not objecting to the reasonable doubt instruction. The district court gave the reasonable doubt instruction mandated by NRS 175.211, and this court has repeatedly upheld the constitutionality of that instruction. *See, e.g., Chambers v. State*, 113 Nev. 974, 982-83, 944 P.2d 805, 810 (1997); *Evans v. State*, 112 Nev. 1172, 1190-91, 926 P.2d 265, 277 (1996); *Lord v. State*, 107 Nev. 28, 40, 806 P.2d 548, 556 (1991), *limited on other grounds by Summers v. State*, 112 Nev. 1326, 1331, 148 P.3d 778, 782 (2006). Accordingly, Walker cannot demonstrate that postconviction counsel omitted a meritorious challenge to trial counsel's performance. The district court therefore did not err in rejecting this postconviction-counsel claim.

Fourth, Walker argues that postconviction counsel should have argued that the "abandoned and malignant heart" language in the malice aforethought instruction was vague and devoid of meaning and the implied malice instruction permitted the jury to find murder without the requisite culpability. This court has repeatedly upheld this language. *See Leonard*

*v. State*, 117 Nev. 53, 78-79, 17 P.3d 397, 413 (2001) (the statutory language defining implied malice is well established in Nevada and accurately informs the jury of the distinction between express and implied malice); *Cordova v. State*, 116 Nev. 664, 666, 6 P.3d 481, 483 (2000) (the substitution of the word "may" for "shall" in an implied malice instruction is preferable because it eliminates the mandatory presumption); *see also Leonard I*, 114 Nev. at 1208, 969 P.2d at 296 (the use of allegedly archaic statutory language in malice instruction did not deprive defendant of a fair trial). Therefore, Walker has not demonstrated that trial counsel performed deficiently in not objecting to the instruction or that postconviction counsel omitted a meritorious challenge to trial counsel's performance. Accordingly, the district court did not err in denying the postconviction-counsel claim.

*Juror questions*

Citing *Flores v. State*, 114 Nev. 910, 913, 965 P.2d 901, 902-03 (1998), Walker argues that postconviction counsel should have challenged the manner in which trial counsel and the district court managed juror questions. We disagree. On direct appeal, this court concluded that "[a]lthough the district court did not strictly comply with *Flores*, none of the instances Walker identifies suggest that the error had a substantial or injurious effect on the jury's verdict." *Walker I*, Docket No. 49507, Order of Affirmance at 3. Considering the decision in *Walker I*, which is the law of the case on the merits of the underlying issue, Walker has not demonstrated that postconviction counsel performed deficiently in omitting this claim or that he was prejudiced by the omission.

*Failure to present mitigating evidence*

Walker argues that postconviction counsel should have substantiated his claim that trial counsel failed to present evidence of his

family history of addiction and past trauma or prepare the penalty phase experts for their testimony. Walker has not demonstrated deficient performance.

Postconviction counsel raised claims related to mitigation evidence and requested funding to conduct additional investigation in that respect, which the district court denied. The district court's denial of investigative funds could have been raised in the prior postconviction appeal. In addition, given the nature of the evidence offered with the instant postconviction petition, even if trial counsel developed this evidence but declined to introduce it, such a decision would not have been clearly unreasonable. *See Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (explaining that appellate court is "required not simply to give the attorneys the benefit of the doubt, but to affirmatively entertain the range of possible reasons [an appellant's] counsel may have had for proceeding as they did" (internal quotation marks, alterations, and citations omitted)); *McNelton v. State*, 115 Nev. 396, 410, 990 P.2d 1263, 1273 (1999) (noting that decision concerning what mitigation evidence to present is a tactical one). Much of the new evidence about Walker's childhood mirrors what was presented at trial and is reflected in the jury's finding of mitigating circumstances. In particular, at least one juror found that Walker was the product of a broken home, was raised in poverty by a dysfunctional family, had an absent father, only later discovered his biological father's identity, had two older siblings who died drug-related deaths, was placed in special education, had repeated school failures, suffered with learning disabilities, was introduced to drugs at a young age, was addicted to drugs, and abused alcohol.

In addition, at least one juror concluded that Walker's prior incarcerations mitigated the Anziano murder. Most of the evidence

submitted with the instant petition about Walker's time in prison consists of statements from people who served time with him. They described the racism, harassment, and violence that Walker and others faced in prison. They also described Walker's behavior and while some described him as quiet and a peacemaker, they also noted his drug abuse and disciplinary infractions. Eliciting testimony from numerous inmates who described the years they spent with Walker in prison bore a significant risk of casting him in an unfavorable light. *See Lisle v. State*, 131 Nev. 356, 367, 351 P.3d 725, 733 (2015) (recognizing that "mitigation evidence can be a double-edged sword that may indicate diminished culpability but at the same time may indicate an increased risk of future dangerousness"). This testimony could have reminded the jury of the extensive time Walker spent incarcerated as an adult, the seriousness of the prior crime that earned him such a lengthy sentence, and that the lengthy sentence did not quell his criminal impulses.

Walker further has not demonstrated a reasonable probability of a different result at the penalty hearing had trial counsel presented the evidence offered with the second postconviction petition. The jurors found six aggravating circumstances. Five of them were based on Walker's prior criminal history and the instant series of crimes involving the use or threat of violence to another person. These crimes included two attempted murders, robbery with the use of a deadly weapon, attempted robbery with the use of a deadly weapon, and attempted battery by a prisoner. The jury also found that the murder was committed during the course of a robbery. These are compelling aggravating circumstances. They show that Walker has a casual and callous relationship with violence and even a considerable prison sentence was not effective at tempering it. Within a few years of his release from prison, Walker engaged in a series of robberies in which he

SUPREME COURT
OF
NEVADA

(O) 1947A

24

killed one person and attempted to kill another in less than two days. The proffered additional mitigation evidence was not so compelling as to outweigh these aggravating circumstances and posed a significant risk of casting Walker in a more unfavorable light. Therefore, the district court did not err in denying the postconviction-counsel claim without conducting an evidentiary hearing.

*Penalty phase evidence*

Walker argues that postconviction counsel should have challenged trial counsel's ineffectiveness regarding the admission of evidence during the penalty phase of trial. He contends that trial counsel should have objected to the admission of: hearsay about Walker's prior criminal record and prison disciplinary record; improper victim impact evidence; improper testimony about appellate review; and improper testimony suggesting that Walker could be released if given a sentence less than death.

We conclude that postconviction counsel was not ineffective. On direct appeal, this court concluded that the district court did not err in admitting hearsay evidence, no improper victim impact testimony was admitted, the State did not mislead the jury regarding the appellate process and the jury's responsibility in deciding the sentence, and there was no discernable error regarding the admission of presentence investigation reports. *Walker I*, Docket No. 49507, Order of Affirmance, at 10-11. And in the first postconviction appeal, this court concluded that counsel was not ineffective for not challenging sentencing credit testimony because the testimony did not indicate that Walker would be released if not sentenced to death. *Walker II*, Docket No. 62838, Order of Affirmance at 14. In light of those conclusions in *Walker I* and *Walker II*, which establish the law of

the case on the underlying issues, we conclude that Walker has not demonstrated that postconviction counsel neglected to raise meritorious claims. Therefore, the district court did not err in denying these claims.

*Penalty phase prosecutorial misconduct*

Walker argues that postconviction counsel should have argued that trial counsel was ineffective in not objecting to prosecutorial misconduct during the penalty phase of trial. We disagree.

First, Walker claims that the prosecutor improperly called him a failed serial killer and referred to him as an animal. Walker has not demonstrated that postconviction counsel acted unreasonably in omitting a trial-counsel claim related to these comments. The prosecutor's argument asserting that Walker failed at multiple murders was supported by the evidence introduced at the trial and penalty hearing. In particular, Walker's other crimes included robberies during which Walker shot a victim in the torso and slashed another victim's throat. The injuries he inflicted could have resulted in each victim's death. And while a prosecutor may not characterize a defendant as an animal, *see Barron v. State*, 105 Nev. 767, 780, 783 P.2d 444, 452 (1989) (providing that a prosecutor has a "duty not to ridicule or belittle the defendant or his case"); *McGuire v. State*, 100 Nev. 153, 157, 677 P.2d 1060, 1064 (1984) ("Disparaging comments have absolutely no place in a courtroom, and clearly constitute misconduct."), the prosecutor expressly stated that he was not going to call Walker a "dog." But to the extent that the comment may have been improper, Walker did not demonstrate prejudice as a result of counsel's failure to object or raise the issue on appeal because the decision between life and death was not close and therefore there was not a reasonable probability of a different outcome at trial or on appeal. *See Schoels v. State*, 114 Nev. 981, 989, 966

SUPREME COURT
OF
NEVADA

(O) 1947A

P.2d 735, 740 (1998) (providing that in evaluating prosecutorial misconduct during the penalty phase, this court "will reverse the conviction or death penalty where the decision between life or death is a close one or the prosecution's case is weak"), *rehearing granted on other grounds*, 115 Nev. 33, 975 P.2d 1275 (1999). Because postconviction counsel therefore did not omit a meritorious trial- or appellate-counsel claim based on this alleged prosecutorial misconduct, the district court did not err in rejecting the postconviction-counsel claim.

Second, Walker argues that the prosecutor improperly asked the jurors to place themselves in the victim's shoes and compared the due process Walker was receiving to his actions against Anziano. These arguments were improper. *See Com. of Northern Mariana Islands v. Mendiola*, 976 F.2d 475, 486 (9th Cir. 1992) (recognizing that argument that defendant poses a risk to the specific jurors in the case was "plainly designed to appeal to the passions, fears, and vulnerabilities of the jury"), *overruled on other grounds by George v. Camacho*, 119 F.3d 1393 (9th Cir. 1997); *Berry v. State*, 882 So. 2d 157, 164 (Miss. 2004) (concluding that comparison of victim's rights to defendant's rights was egregious and "possibly rose to the level of prosecutorial misconduct"). Nevertheless, Walker has not demonstrated prejudice as a result of counsel's failure to object or raise the issue on appeal because the decision between life and death was not close and therefore there was not a reasonable probability of a different outcome at trial or on appeal. *See Schoels*, 114 Nev. at 989, 966 P.2d at 740. Because postconviction counsel therefore did not omit a meritorious trial- or appellate-counsel claim based on this prosecutorial misconduct, the district court did not err in rejecting the postconviction-counsel claim.

Third, Walker argues that the prosecution improperly asked the jury to consider justice for the victims and society. These arguments were not improper. "[A] prosecutor in a death penalty case properly may ask the jury, through its verdict, to set a standard or make a statement to the community." *Williams v. State*, 113 Nev. 1008, 1020, 945 P.2d 438, 445 (1997), *overruled on other grounds by Byford v. State*, 116 Nev. 215, 994 P.2d 700 (2000). Because Walker has not demonstrated that prior counsel performed deficiently, the district court did not err in rejecting the postconviction-counsel claim.

Fourth, Walker argues that the prosecution improperly questioned a witness and elicited testimony about Walker invoking his right to remain silent during the penalty hearing. We disagree because trial testimony established that Walker was willing to talk with detectives after his arrest and did not unequivocally invoke his right to remain silent. *See Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010) (recognizing that a suspect who does not unequivocally invoke his right to remain silent, or who does so ambiguously while continuing to answer questions, is deemed to have waived his rights); *see also Gaxiola v. State*, 121 Nev. 638, 655, 119 P.3d 1225, 1237 (2005) (recognizing that prosecution may not comment on defendant's invocation of right to remain silent). Thus, the challenged comments were not improper, and consequently, trial counsel was not deficient in failing to object. Accordingly, Walker has not demonstrated that postconviction counsel omitted a meritorious challenge to trial counsel's performance.

Fifth, Walker argues that the prosecutor impermissibly referred to facts that were not in evidence in referencing Walker slapping a guard. Walker has not demonstrated that postconviction counsel acted

SUPREME COURT
OF
NEVADA

(O) 1947A

28

unreasonably as the argument was supported by Walker's disciplinary history, which was introduced during the penalty hearing, and by penalty phase testimony.

Lastly, Walker challenges arguments that: (1) the jury should weigh the worth of the Anziano family against Walker; (2) implied the jury's duty was to return a death verdict while showing a photograph of Anziano; (3) disparaged the use of psychological evidence; and (4) impermissibly inflamed the jury's passions by placing the responsibility for any future crimes he commits on the jurors. Walker also argues that the prosecutor failed to respond to numerous discovery requests, which permitted the prosecutor to ambush him with evidence he could not review. Trial counsel objected to the comments and appellate counsel challenged the comments and alleged the discovery violations on appeal. This court concluded that the comments were either proper or did not amount to a denial of due process and Walker was not prejudiced by any alleged discovery violation. *Walker I*, Docket No. 49507, Order of Affirmance, at 6, 12-13. Considering the decision in *Walker I*, which is the law of the case on the underlying issues, Walker has not demonstrated that postconviction counsel acted unreasonably in declining to raise claims for which he could not demonstrate prejudice.

*Penalty phase jury instructions*

Walker argues that postconviction counsel should have claimed that trial counsel was ineffective for failing to challenge or request several jury instructions. These claims lack merit for the reasons discussed below.

First, Walker argues that trial counsel should have asserted that the instruction that defined mitigating circumstances as those circumstances which reduce the degree of moral culpability impermissibly

SUPREME COURT
OF
NEVADA

(O) 1947A

29

limited the consideration of mitigating circumstances. As the instruction was not reasonably likely to confuse the jury, *see Watson v. State*, 130 Nev. 764, 783-87, 335 P.3d 157, 171-74 (2014), Walker has not demonstrated that trial counsel was ineffective for failing to challenge the instruction. Accordingly, he also has not demonstrated that postconviction counsel omitted a meritorious claim.

Second, Walker argues that trial counsel should have insisted that, pursuant to *Sonner v. State*, 112 Nev. 1328, 1345, 930 P.2d 707, 718 (1996), the jury be instructed that it could only consider other matter evidence after it found the aggravating circumstances. Walker has not demonstrated deficient performance or prejudice. The statement he points to in *Sonner* described the death penalty process as part of a constitutional challenge; it did not mandate the use of a new instruction. Additionally, as there was sufficient evidence supporting the aggravating circumstances found, *see Walker I*, Docket No. 49507, Order of Affirmance, at 13, Walker did not demonstrate that the jury's consideration of other matter evidence improperly influenced its finding of the aggravating circumstances. He therefore did not demonstrate that postconviction counsel omitted a meritorious claim in this respect.

Third, Walker argues that trial counsel should have challenged instructions that required the jury to unanimously find mitigating circumstances. Walker has not demonstrated deficient performance or prejudice. The instructions clearly provided that "[a] mitigating circumstance itself need not be agreed to unanimously," and "any one juror can find a mitigating circumstance." Considering the totality of the instructions, there is not a reasonable probability that the jurors thought they had to be unanimous in finding mitigating circumstances. *See Boyde*

SUPREME COURT
OF
NEVADA

(O) 1947A

30

*v. California*, 494 U.S. 370, 380 (1990) (providing that an instruction is ambiguous where "there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence"). As such, Walker has not demonstrated that objectively reasonable trial counsel or postconviction counsel would have challenged the instruction.

Fourth, Walker argues that trial counsel should have objected to the anti-sympathy instruction. Walker has not demonstrated that postconviction counsel omitted a meritorious trial-counsel claim because this court has approved the anti-sympathy instruction where the jury is also instructed to consider "any mitigating evidence." *Leonard v. State*, 117 Nev. 53, 79, 17 P.3d 397, 413-14 (2001); *see also Sherman v. State*, 114 Nev. 998, 1011, 965 P.2d 903, 912 (1998) (upholding anti-sympathy instruction where trial court also instructs the jury to consider mitigating facts). Here, the jury was so instructed. Therefore, his trial counsel was not ineffective, and the district court did not err in denying this postconviction-counsel claim.

Fifth, relying on *Hurst v. Florida*, 136 S. Ct. 616 (2016), Walker argues that the district court erred in not instructing the jury that it must determine that the mitigating circumstances do not outweigh the aggravating circumstances beyond a reasonable doubt. This court has rejected the interpretation of *Hurst* advocated by Walker. *See Castillo v. State*, 135 Nev. 126, 442 P.3d 558 (2019) (rejecting argument that *Hurst* announced new law relevant to the weighing component of Nevada's death penalty procedures or appellate reweighing), *petition for cert. filed*, ___ U.S.L.W. ___ (U.S. Feb. 12, 2020) (No. 19-7647); *Jeremias v. State*, 134 Nev. 46, 58, 412 P.3d 43, 54 (2018). Therefore, Walker cannot demonstrate deficient performance based on any prior counsel's failure to raise this issue

or resulting prejudice, and the district court did not err in denying this claim.

Sixth, Walker argues that trial counsel should have objected to the district court's failure to issue a presumption-of-life instruction that correlates to the presumption-of-innocence instruction. He asserts that the instruction is warranted because, pursuant to *Hurst*, all findings necessary to support a death sentence must be made beyond a reasonable doubt. Walker has not demonstrated that postconviction counsel performed deficiently. As discussed above, *Hurst* does not require that the weighing determination be subject to the beyond-a-reasonable-doubt standard of proof. The jury was instructed that it may impose a sentence of death only if it unanimously found at least one aggravating circumstance existed beyond a reasonable doubt, if each juror determined that the mitigating circumstances found did not outweigh the aggravating circumstance(s), and if the jurors unanimously determined that death was the appropriate sentence. Other instructions reiterated that the jury was not required to impose a death sentence and the jury always had the discretion to impose a sentence less than death. As the jury was adequately instructed that it could not impose death unless the State proved the existence of an aggravating circumstance beyond a reasonable doubt, and that even then, it still maintained the discretion to impose a sentence less than death, Walker has not demonstrated that an additional instruction on a presumption of life was necessary or warranted. *See Vallery v. State*, 118 Nev. 357, 372, 46 P.3d 66, 77 (2002) ("The district court may . . . refuse a jury instruction . . . that is substantially covered by other instructions."). Therefore, the district court did not err in denying this postconviction-counsel claim.

*Shackles*

Walker asserts that postconviction counsel should have alleged ineffective assistance because trial counsel failed to challenge the use of visible shackles during the penalty hearing. We disagree. While being escorted into the courtroom, Walker briefly appeared shackled in front of several jurors. Officers immediately removed him from their view and informed the court. The viewing was accidental and brief. He was not paraded in front of the jury in visible restraints. *See Nelson v. State*, 123 Nev. 534, 545, 170 P.3d 517, 525 (2007) (concluding that failure to hold hearing before requiring leg restraints was harmless where no record that any juror saw restraints and defendant not made to walk in front of jury in restraints). Therefore, Walker did not demonstrate that trial counsel would have been able to successfully move for a mistrial or that appellate counsel would have been able to demonstrate reversible error. *See Ghent v. Woodford*, 279 F.3d 1121, 1133 (9th Cir. 2002) (recognizing no inherent prejudice when several jurors glimpsed defendant in shackles as he was entering courtroom); *United States v. Olano*, 62 F.3d 1180, 1190 (9th Cir. 1995) (holding that "a jury's brief or inadvertent glimpse of a defendant in physical restraints is not inherently or presumptively prejudicial" where, "on the sixth day of trial, the jury briefly witnessed [the defendant] in handcuffs as he entered the courtroom"). Therefore, the district court did not err in denying this postconviction-counsel claim without conducting an evidentiary hearing.

*Elected judges*

Walker argues that the district court erred in denying his claim that postconviction counsel should have challenged the ability of elected judges to conduct an adequate review of his case. We disagree. Walker did

Supreme Court
of
Nevada

(O) 1947A

33

not substantiate his claims with portions of the record demonstrating bias against him based on the fact that the district judge and Supreme Court Justices are popularly elected. *See Hargrove v. State*, 100 Nev. 498, 502, 686 P.2d 222, 225 (1984) (requiring petitioner to plead "specific factual allegations that would, if true, have entitled him" to relief). And he was found guilty and sentenced to death by a jury, not judges. Therefore, the district court did not err in denying this claim.

*Lethal injection*

Walker argues that postconviction counsel should have argued that lethal injection constitutes cruel and unusual punishment. This claim does not challenge the validity of the conviction or sentence and thus cannot be raised in a postconviction petition for a writ of habeas corpus, *see McConnell v. State*, 125 Nev. 243, 249, 212 P.3d 307, 311 (2009); therefore, postconviction counsel was not ineffective for failing to litigate this issue in the prior petition.

*Ineffective assistance of appellate counsel*

Walker argues that postconviction counsel should have asserted that appellate counsel was ineffective for not adequately challenging: the State's use of peremptory challenges, the exclusion of evidence of voluntary intoxication, errors during voir dire, the admission of prior bad act evidence, the admission of victim impact evidence, prosecutorial misconduct, the use of restraints during trial, the admission of gruesome photographs, jury instructions, and the admission of prejudicial videos. For the same reasons discussed previously, Walker has not demonstrated that appellate counsel unreasonably neglected to raise viable claims on appeal or that he was prejudiced. Walker also claims that appellate counsel failed to argue that the district court erred in denying

SUPREME COURT
OF
NEVADA

(O) 1947A

several motions argued during the course of trial. However, other than listing claims that appellate counsel should have addressed, Walker does not provide any further argument on these issues. Therefore, he has failed to demonstrate that review is warranted.[8] *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) ("It is appellant's responsibility to present relevant authority and cogent argument; issues not so presented need not be addressed by this court.").

*Cumulative error review*

Walker argues that the district court should have considered several claims that he had raised on direct appeal and in the first postconviction petition so that their cumulative effect would be considered with other claims for which he can demonstrate good cause to overcome the procedural bars. We disagree. Walker cites no authority that requires a state court to consider the cumulative effect of defaulted claims. The factual and legal bases for the claims he seeks to raise again were available during the prior proceedings, and he therefore cannot show that some impediment external to the defense prevented him from raising them before. *Hathaway*, 119 Nev. at 252-53, 71 P.3d at 506. But more importantly, the reraised claims were previously rejected on the merits. Claims that we have already rejected on the merits "cannot logically be used to support a cumulative error claim because we have already found there was no error to cumulate."

---

[8]We note that appellate counsel raised 15 issues, not including a number of sub-issues, in an approximately 80-page opening brief. It is well established that appellate counsel is not required to raise every conceivable issue to be effective. *See Ford v. State*, 105 Nev. 850, 853, 784 P.2d 951, 953 (1989) (reiterating Supreme Court's observation from *Jones v. Barnes*, 463 U.S. 745 (1983), that "appellate counsel is most effective when she does not raise every conceivable issue on appeal").

*In re Reno*, 283 P.3d 1181, 1223-24 (Cal. 2012); *see also Rippo v. State*, 134 Nev. 411, 436, 423 P.3d 1084, 1107 (2018), *amended on denial of rehearing by Rippo v. State*, 432 P.3d 167 (2018). Therefore, Walker has not demonstrated good cause to overcome the procedural bars or to avoid the law-of-the-case doctrine.

Having considered Walker's arguments and concluding that they lack merit, we

ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Pickering

_____ J.
Gibbons

_____, J.
Hardesty

_____ J.
Parraguirre

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Silver

cc: Hon. Valerie Adair, District Judge
Joanne L. Diamond
Federal Public Defender/Las Vegas
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A